BOSTON SYMPHONY ORCHESTRA, INC. *vs.* COMMERCIAL
UNION INSURANCE COMPANY & another.[1]

Suffolk. October 2, 1989. - November 7, 1989.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Insurance,* Liability insurance, Coverage, Insurer's obligation to defend,
Construction of policy, Unfair act or practice. *Consumer Protection
Act,* Insurance, Unfair act or practice.

Under a policy of liability insurance issued to Boston Symphony Orches-
tra, Inc., providing coverage for injuries "arising out of ... the publica-
tion or utterance of a libel or slander or of other defamatory [or] dis-
paraging material" and obligating the insurer to defend any action
brought against the insured on account of a covered injury, the insurer
had a duty to defend an action by an actress seeking consequential
damages for the insured's alleged repudiation of its contract for her to
appear in a series of public performances, where the actress's complaint
could be fairly read as alleging that the cancellation was a statement
about her which damaged her reputation and caused others not to hire
her, and where the insurer, before reviewing the complaint, knew of the
insured's public cancellation of the performances, and of the actress's
position that the cancellation had caused her public ridicule and embar-
rassment. [10-13]

In an action by an insured against its insurer, which had acted promptly to
disclaim certain coverage under a policy of insurance, the record on the
insurer's motion for summary judgment showed no violation by it of
G. L. c. 176D, § 3(9), provisions relating to unfair claim settlement
practices. [13-14]

On an insured's claim under G. L. c. 93A against its insurer, alleging
breach of a policy provision requiring the insurer to defend any action
brought against the insured on account of a covered injury, summary
judgment was properly entered in favor of the insurer, where it ap-
peared that the insurer's refusal to defend an action, although incorrect,
was not unreasonable and was based on advice of outside counsel, and
where no factual issue as to any bad faith or ulterior motive on the part
of the insurer was shown. [14-15]

---

[1]American Employers' Insurance Company.

CIVIL ACTION commenced in the Superior Court Department on October 22, 1984.

The case was heard by *Paul A. Chernoff*, J., on motions for summary judgment and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Steven L. Schreckinger* (*Cassandra Warshowsky* with him) for the plaintiff.

*Richard L. Neumeier* for the defendants.

NOLAN, J. The Boston Symphony Orchestra, Inc. (BSO), commenced this action against the defendants, Commercial Union Insurance Company and American Employers' Insurance Company (both are hereinafter referred to as "Commercial Union") in Superior Court. The BSO's complaint was divided into two counts. Count I alleged that Commercial Union wrongfully failed to defend the BSO in an action brought against the BSO by actress Vanessa Redgrave (Redgrave) and another. Count II alleged that Commercial Union engaged in unfair claims settlement practices in violation of G. L. c. 93A, and G. L. c. 176D, § 3 (9) (1988 ed.). A judge of the Superior Court allowed the BSO's motion for summary judgment on Count I, and allowed Commercial Union's motion for summary judgment on Count II. The judge then reported the correctness of his orders to the Appeals Court. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We granted Commercial Union's request for direct appellate review.

In March, 1982, the BSO contracted with Vanessa Redgrave Enterprises, Ltd. (Enterprises), for Redgrave to appear as narrator in a series of performances of Igor Stravinsky's "Oedipus Rex." When the BSO began to receive messages of protest relating to its engagement of Redgrave, it cancelled the contract with Enterprises. On April 1, 1982, the BSO issued a statement announcing the cancellation of "Oedipus Rex." Shortly thereafter Redgrave's attorneys communicated with the BSO, demanding an apology and the restoration of Redgrave's engagement. Barring the BSO's acquiescence to their demands,

Redgrave's attorneys threatened a lawsuit to vindicate their client's rights, including among others, her "right" to speak freely, her "right" to perform without fear of blacklisting or discrimination, and her "right" not to be subjected to public ridicule or embarrassment. The BSO forwarded this demand letter to its liability insurer, Commercial Union, together with a letter which enunciated the BSO's expectation that Redgrave's suit, when and if it came, would involve claims for damage to her personal and business reputation. Commercial Union requested more information from the BSO on Redgrave's anticipated lawsuit. The BSO supplied Commercial Union with a copy of the Redgrave contract, all correspondence it received regarding the matter, and other relevant materials.

On October 22, 1982, Redgrave and Enterprises filed suit against the BSO. The complaint alleged that the BSO had breached its contract with Redgrave and that the "BSO's repudiation and breach of contract ha[d] led others to refrain from hiring Ms. Redgrave for professional engagements." The BSO forwarded the complaint to Commercial Union. Four days after receiving the complaint, Commercial Union disclaimed coverage and declined to provide a defense for the BSO.[2]

As Redgrave's lawsuit proceeded toward trial, the BSO provided Commercial Union with information regarding the lawsuit on two occasions. The gist of the information which the BSO forwarded to Commercial Union was that the nature of the damages sought by Redgrave was uncertain. Although denominated as consequential contract damages in the complaint, the damages Redgrave sought during the course of the litigation appeared as though they might flow from implications of the BSO's act of cancelling "Oedipus Rex." Commercial Union did not undertake the defense of the BSO.

---

[2]Redgrave's complaint, in addition to alleging breach of contract by the BSO, included a number of other claims. See *Redgrave v. Boston Symphony Orchestra, Inc.*, 557 F. Supp. 230, 232 (D. Mass. 1983).

The Commercial Union insurance policy issued to the BSO provides coverage for injuries "arising out of . . . the publication or utterance of a libel or slander or of other defamatory [or] disparaging material." In addition, the policy obligates the insurer to defend any action brought against the insured seeking damages on account of a covered injury.[3] The Superior Court judge determined that there was a possibility that the damages sought by Redgrave would be covered under the policy. The judge concluded, therefore, that the insurer should have defended the BSO.

1. *Duty to defend.* It is axiomatic that an insurance company's duty to defend is broader than its duty to indemnify. An insurer must indemnify its insured when a judgment within the policy coverage is rendered against that insured. The duty to defend, however, is antecedent to, and independent of, the duty to indemnify. See *Magoun* v. *Liberty Mut. Ins. Co.*, 346 Mass. 677, 681-682 (1964). The obligation of an insurer to defend is not, and cannot be, determined by reference to the facts proven at trial. Rather, the duty to de-

---

[3]The relevant portions of the policy read as follows:
"PERSONAL INJURY LIABILITY COVERAGE

"1. Coverage Agreement. The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury (herein called 'personal injury') sustained by any person or organization and arising out of one or more of the following offenses committed in the conduct of the named insured's business:
"  . . . .
"B. the publication or utterance of a libel or slander or of other defamatory [or] disparaging material, or a publication [or] utterance in violation of an individual's right of privacy, except publications or utterances in the course of or relating to advertising, broadcasting or telecasting activities conducted by or on behalf of the named insured;
"  . . . .
"if such offense is committed during the policy period within the United States of America, . . . and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgement or to defend any suite [sic] after the applicable limit of the company's liability has been exhausted by payment of judgements or settlements."

fend is based on the facts alleged in the complaint and those facts which are known by the insurer. *Desrosiers* v. *Royal Ins. Co.*, 393 Mass. 37, 40 (1984).

Commercial Union knew from Redgrave's complaint that she sought consequential damages for the BSO's alleged breach and repudiation of its contract with her. The factual basis for Redgrave's claim was her allegation that the BSO's breach "led others to refrain from hiring [her] for professional engagements." This language could be, as the insurer argues, simply an allegation that a number of specific engagements that would normally have been offered. to Redgrave were not in fact offered to her as a result of the BSO's breach of contract. Alternatively, however, the language is fairly susceptible to another interpretation. Redgrave may have been alleging that the BSO's cancellation of "Oedipus Rex," in the circumstances, was a statement about Redgrave which damaged her reputation and caused others not to hire her.[4]

Prior to receiving Redgrave's complaint, Commercial Union knew that the BSO had made a public cancellation of "Oedipus Rex." Commercial Union also knew that Redgrave thought that the cancellation subjected her to public ridicule and embarrassment. Redgrave's attorney said as much in his demand letter to the BSO. With this background, we think that the complaint is all the more susceptible to the interpretation that Redgrave's reputation was damaged and that because of that, others would not hire her. The question then becomes whether the allegations of the complaint "state or adumbrate a claim covered by the policy terms." *Continental Casualty Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984). We turn to that question.

---

[4]It is interesting to note that at the trial of Redgrave's action, a judge of the United States District Court held that the consequential damages sought by Redgrave were analogous to damages for defamation. *Redgrave* v. *Boston Symphony Orchestra*, 602 F.Supp. 1189, 1197-1203 (D. Mass. 1985), vacated & remanded, 831 F.2d 339 (1st Cir. 1987), reh'g en banc, 855 F.2d 888 (1st Cir. 1988), cert. denied, 109 S.Ct. 864 (1989).

The policy issued to the BSO by Commercial Union covers personal injury "arising out of . . . the publication or utterance of a libel or slander or of other defamatory [or] disparaging material." When Commercial Union issued this policy it undertook the obligation of defending the BSO against more than claims for just libel or slander. It expressly undertook the obligation of defending against claims for injury arising out of the publication of "*other* defamatory [or] disparaging material" (emphasis added). This language extends the coverage of the policy beyond actions for libel or slander. If it did not, the language would be meaningless. See *Sherman* v. *Employers Liab. Assurance Corp., Ltd.*, 343 Mass. 354, 357 (1961).

"[O]ther defamatory or disparaging material" is not defined in the policy. Commercial Union contends that this language refers to the torts of product disparagement and disparagement of property. The BSO contends that the term disparage should be given its ordinary meaning. Disparage means, among other things, "to lower in rank and estimation by actions or words," or "to speak slightingly of." Webster's New International Dictionary of the English Language 750 (2d ed. 1959). "Where the language permits more than one rational interpretation, that most favorable to the insured is to be taken." *Palmer* v. *Pawtucket Mut. Ins. Co.*, 352 Mass. 304, 306 (1967). The essence of Redgrave's claim, as discussed above, was that the BSO's breach of contract somehow spoke slightingly about her and damaged her reputation. If the ambiguous language of the policy is construed against the insurer, Redgrave's complaint was "reasonably susceptible" of stating a claim that would fall within the zone of covered injuries. *Vappi & Co.* v. *Aetna Casualty & Sur. Co.*, 348 Mass. 427, 431 (1965).

Commercial Union argues that Redgrave, even if her reputation was injured within the meaning of the policy, did not state a claim for damages arising out of such injury. The fact that Redgrave's claim was denominated as a contract claim is not controlling. See *Gilbane, supra* at 146-147. The process is not one of looking at the legal theory enunciated by

the pleader but of "envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Id.*, quoting *Sterilite Corp.* v. *Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983). The merits of the claim are, likewise, not a ground upon which an insurer can refuse to defend its insured. As the policy itself states, the right to a defense inures "even if any of the allegations of the suit are groundless, false or fraudulent." Redgrave's claim, regardless of its truth or soundness, was one which was reasonably within the broad coverage provided by Commercial Union's policy.

Commercial Union contends that the holding in this case will require personal injury insurers to defend contract actions anytime an insured is found to be in breach of a contract with a famous person. That result does not ineluctably follow from our conclusion in this case, however. First of all, if a famous person alleges that the actions of another somehow defamed him or her, then, no matter what the label on that claim, the insurer would be required to defend the action if the policy covered defamation. But, in any event, the resolution to the quandary proposed by Commercial Union lies, in the first instance, with the language of its policy. If an insurer desires to cover, and therefore to defend against, only those actions seeking damages for libel, slander, product disparagement, and disparagement of property, then the insurer can issue a policy which says as much. That is not the case with the Commercial Union policy before us.

2. *Statutory claims.* The BSO appeals from the entry of summary judgment in favor of Commercial Union on the BSO's claims under G. L. c. 93A and c. 176D. In its complaint, the BSO alleged that Commercial Union violated three of the clauses in G. L. c. 176D, § 3 (9): § 3 (9) (*f*), which proscribes "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear"; § 3 (9) (*g*), which prevents insurance companies from "[c]ompelling insureds to institute litigation to

recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds"; and § 3 (9) (*n*), which makes it illegal to fail "to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." The record shows, however, that Commercial Union disclaimed coverage just four days after it received Redgrave's complaint from the BSO. Commercial Union explained that it was disclaiming coverage based on the fact that the insurance policy did not afford coverage for the acts alleged in Redgrave's complaint. Commercial Union did not make any unreasonably low settlement offers. At no time was liability "reasonably clear." We do not see, on the record before us, any violations of G. L. c. 176D, § 3 (9).[5]

The BSO also contends that Commercial Union violated G. L. c. 93A by unreasonably failing to defend the BSO against Redgrave's suit. In the first part of this opinion we decided that Commercial Union incorrectly interpreted its policy when it declined to defend the BSO. However, we think Commercial Union's interpretation was not unreasonable. There was no applicable precedent with regard to the coverage issue in this case when Commercial Union denied coverage. Moreover, the insurer asked for, received, and relied upon an opinion from outside counsel regarding its liability under the policy. There is no evidence of any bad faith or ulterior motives in Commercial Union's disclaimer of liability. Liability under G. L. c. 93A is based upon the employment of unfair or deceptive acts or practices. See *PMP Assocs.* v. *Globe Newspaper Co.*, 366 Mass. 593, 595-596

---

[5]Commercial Union contends that the BSO cannot bring an action under G. L. c. 93A, § 9 (1), since the transaction in this case took place in a commercial setting, making G. L. c. 93A, § 11, applicable. General Laws c. 93A, § 9 (1), incorporates G. L. c. 176D expressly, whereas c. 93A, § 11, does not. In view of our inability to find any violation of the enumerated clauses of G. L. c. 176D, § 3 (9), we need not address Commercial Union's argument.

(1975). In good faith, Commercial Union relied upon a plausible, although ultimately incorrect, interpretation of its policy. There is nothing immoral, unethical or oppressive in such an action. *Id.* at 596. Nor is such an action within "the penumbra of some common-law, statutory, or other established concept of unfairness." *Id.* The BSO makes much of the fact that on two separate occasions after Commercial Union's disclaimer of coverage, it sent Commercial Union materials from the Redgrave action which indicated that Redgrave was making injury to her reputation an issue in the case. That fact, however, does not affect Commercial Union's position throughout the litigation that consequential contract damages were not covered under the policy. We hold that Commercial Union did not engage in unfair or deceptive acts in this case.

The BSO argues that the entry of summary judgment was not appropriate on the statutory counts since the insurer's state of mind and the reasonableness of the insurer's actions are factual issues which must be resolved at trial. It is undisputed, however, that Commercial Union had all the materials sent by the BSO, including the Redgrave complaint, when it disclaimed coverage. It is also undisputed that Commercial Union relied on the complaint and the advice of counsel when it denied coverage. Summary judgment was appropriate. The BSO cannot rely upon its assertion that further discovery may turn up evidence of "bad faith."

Finally, two points are in order. First, our opinion in this case should not be taken to mean that an insured can, in the absence of a complaint that requires coverage, force its insurer to defend the insured by simply telling the insurer facts which would create coverage. We hold only that an insurer must give consideration to facts outside the complaint when it considers the allegations in the complaint to determine if coverage exists. Secondly, the availability of an action for declaratory relief should not be ignored by insurance companies. The existence of the duty to defend can be established

quickly and efficiently in such an action when there is a question as to the applicability of an insurance policy.

*Judgment affirmed.*