Lenk, J.
Plaintiff Horace Mann Insurance Company (“Horace Mann”) brings this action for declaratory judgment, seeking a declaration that it has no duty to defend or indemnify John or Jane Doe in an underlying action also pending before this court.[2] This action is currently before the court on plaintiffs motion for summary judgment. For the reasons outlined below, the plaintiffs motion is DENIED.
BACKGROUND
The undisputed material facts are as follows:
In September of 1987 XYZ, Inc.,[3] a licensed adoption placement agency, placed three children, George Doe, age 11; Paul Doe, age 10; and Joan Doe, age 7, in the care of John and Jane Doe, a married couple living in Middlesex County. George, Paul and Joan are *149 biological siblings and the ultimate purpose of the placement was for the adoption of the three children. Mary Roe, a licensed social worker, was assigned to the Does to assist them with the adoption. A.J.R. and J.B., also licensed social workers, served as Mary Roe’s supervisor.
In February of 1989, John and Jane Doe legally adopted Paul and Joan Doe.[4] In May of 1989, John and Jane Doe discovered that George had been sexually abusing Paul and Joan and encouraging Paul to sexually abuse Joan as well. There is some indication within the parties’ submissions that George had engaged in similar abusive activity even prior to his placement with the Does. Subsequently, George was removed from the Doe household.
On May 15, 1991, John and Jane Doe, on behalf of themselves and Paul and Joan, filed a 15-count complaint naming XYZ, Inc. and Maiy Roe as defendants (the “Underlying Case”). The complaint was later amended to add A.J.R. and J.B. as defendants. The defendants in the Underlying Case filed counterclaims against John and Jane Doe alleging negligence, negligent misrepresentation, contribution and strict liability (the “Counterclaims”).
In the Underlying Case, John and Jane Doe essentially allege that the defendants were negligent in failing to fully inform them of the children’s history and in not fully preparing them to deal with the adoption of sexually abused children. The defendants’ Counterclaims essentially involve allegations that John and Jane Doe were negligent in failing to discover the abuse earlier, failing to take proper precautions to protect the children, and that John and Jane Doe misrepresented to the defendants their ability to care for abused children.
John and Jane Doe turned to their insurance carrier, Horace Mann, for defense and, if necessary, indemnification against the Counterclaims pursuant to the personal liability provisions of their homeowner’s policy. As a result, Horace Mann brought this present action seeking a declaration that it has no duty to defend or indemnify John or Jane Doe in the Underlying Action. In support of this assertion, Horace Mann relies upon exclusions contained -within the Does’ policy which, it asserts, completely preclude any dufy to defend or indemnify against any of the Counterclaims.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56 (c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “Acomplete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991) (citing Celotex v. Catrett, 477 U.S. 317, 322 (1986)).
Horace Mann has moved for summary judgment arguing that a specific policy exclusion precludes any liability on its part to defend or indemnify the Does.
The court notes, at the outset, that an insurer’s duty to indemnify is not coextensive with its duty to defend. Indeed, “[i]t is axiomatic that an insurance company’s duty to defend is broader than its duty to indemnify. The duty to defend ... is antecedent to, and independent of, the duty to indemnify.” Boston Symphony Orchestra v. Commercial Union Ins., 406 Mass. 7, 10 (1989) (citing Magoun v. Liberty Mutual Ins. Co., 346 Mass. 677, 681-82 (1964)). Further, an insurer’s duty to defend “is not, and cannot be, determined by reference to the facts proven at trial. Rather, the duty to defend is based on the facts alleged in the complaint.” Boston Symphony Orchestra, supra at 10-11.
It is well settled in this jurisdiction that “the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: If the allegations of the complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense . . . Otherwise stated, the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." Liberty Mutual Ins. Co. v. SCA Services Inc., 412 Mass. 330, 331-32 (1992) (and cases cited therein).
Finally, the interpretation of policy exclusions is a question of law to be determined by the court. Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 323 (1991) (citing Save-Mor Supermarkets, Inc. v. Skelly Detective Serv., Inc., 359 Mass. 221, 226 (1971)). “In this interpretation, we are guided by three fundamental principles: (1) an insurance contract, like other contracts, is to be construed according to the fair and reasonable meaning of its words ... (2) exclusionary clauses must be strictly construed against the insurer so as not to defeat any coverage or dirpinish the protection purchased by the insured ... and (3) doubts created by any ambiguous words or provisions are to be resolved against the insurer." Camp Dresser & McKee, Inc., supra at 323-24.
The starting point for the court’s analysis is an examination of both the Counterclaims in the Under *150 lying Action and the Does’ insurance policy. The Counterclaims against John and Jane Doe are in eight different counts: two counts of negligence (Counts I and II), two counts of negligent misrepresentation (Counts III and IV), two counts for contribution (Counts V and VI) and two counts of strict liability (Counts VII and VIII).
The Does’ insurance policy provides for the following with respect to liability coverage:
We pay, up to our limit of liability, all sums for which any insured is legally liable because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend any suit seeking damages, provided the suit resulted from bodily injury or property damage not excluded under this coverage. We may make any investigation and settle any claim or suit that we decide is appropriate. We are not obligated to provide a defense after we have paid an amount equal to our limit of liability.
The policy defines “bodily injury” as “bodily harm, sickness or disease to a person including required care, loss of services and death resulting therefrom.” “Occurrence” is defined as “an accident, including continuous or repeated exposure to substantially similar conditions.”
The policy also contains, inter alia, the following exclusions:
1. Exclusions that apply to both personal liability and medical payments to others. This policy does not apply to liability... resulting from bodily injury or property damage caused intentionally by or at the direction of any insured.[5]
2. Exclusions that apply only to personal liability. This coverage does not apply to liability ... for bodily injury to you and, if residents of your household, your relatives, and any other person under the age of 21 in your care or in the care of your resident relatives.
Horace Mann argues that it is the second exclusion, commonly referred to as a “family exclusion,” which precludes any liability on its part.
Looking to this family exclusion, then, and “envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint,” the court must determine if this exclusion precludes both a duty to defend and a duty to indemnify. The plain language of this exclusion precludes coverage for bodily injury to any of the Does, including adoptive children.[6] By extension, any claim for contribution for bodily injury to any of the Does is also excluded from coverage.[7]
In their effort to defend against summary judgment, the defendants rely upon Worcester Ins. Co. v. Fells Acres Day School, Inc., 408 Mass. 393 (1990), to support their contention that a policy exclusion for bodily injuries does not encompass loss of consortium claims and, thus, does not exclude contribution claims for loss of consortium type injuries. Such reliance is misplaced. In Worcester Ins. Co., supra, the Court held only that when an insurance policy itself defines bodily injury as including “loss of services,” it explicitly includes consortium-type injuries. Different policy language, such as that in Bilodeau v. Lumbermens Mut. Casualty Co., 392 Mass. 537 (1984), can be construed to exclude from “bodily injury” the loss of consortium.
While defendants correctly note that the Court in Worcester Ins. Co. held, at 413, that ”[t]he injuries to the adult tort plaintiffs in the form of ‘care and loss of services,’ remain within the scope of coverage unless trial of the issues demonstrates that the insured intended to injure the adult tort plaintiffs,” the defendants incorrectly generalize and interpret the quoted language to mean that, unless a policy exclusion specifically uses the words “loss of services,” loss of consortium claims are not excluded from coverage. However, the Court was not here addressing the issue of whether the use of “bodily injury" in the exclusion was sufficient to exclude loss of consortium claims. Rather, it was concerned with whether there was sufficient evidence to show that the defendant insureds in the Worcester Ins. Co. matter intended to injure the children’s parents when they sexually abused the children in their care. Id. at 413. The court addressed that issue of intent because it had earlier held that, in cases involving rape or sexual assault, “from the very nature of the act, harm to the injured party must have been intended.” Id. at 400. This is significant because intentional torts are excluded from coverage under the first exclusion. Hence, the Court’s discussion, upon which the defendants in the instant matter rely, was centered not on the second exclusion (which concerns us in the case at bar) but upon the first (which does not).
In short, while the defendants are correct that the language from the “intentional acts” exclusion would not bar coverage for contribution to the loss of consortium claims, they are incorrect in thinking that the “family member” exclusion has the same limitations. Reading the two exemptions together, it seems clear that, if the contribution claim in the Underlying Action stood alone, Horace Mann would have no duty to defend or indemnify John and Jane Doe. The contribution claim, however, does not stand alone.
In addition to the contribution claim, the Counterclaims assert counts sounding in negligence, negligent misrepresentation and strict liability. The Counterclaims are somewhat unclear as to who allegedly suffered damages as a result of John and Jane Doe’s alleged conduct and what those damages entailed. If the plaintiffs-in-counterclaim are attempting to assert these claims to recover for damages which the Does themselves suffered, the family member exemption would apply and Horace Mann would appear to have *151 no duiy to defend or indemnify the Does. This interpretation of the Counterclaims, however, is questionable since the plaintiffs-in-counterclaim would appear not to have the standing to raise claims for injuries suffered by the Does.
The only other possibility is that the plaintiffs-in-counterclaim are claiming that they themselves were directly injured by the conduct of John and Jane Doe. Assuming, arguendo, that this is the case, the court must next decide if such allegations “state or adumbrate a claim covered by the policy terms.” Liberty Mutual Ins. Co., supra. Clearly, such a claim would longer fall under the “family member” exemption since none of the plaintiffs-in-counterclaim meet the definition of a family member. Moreover, such claims would not be covered by the “intentional act” exemption since the allegations in the Counterclaims all allege that John and Jane Doe were negligent and “(i]f conduct is negligent it cannot also be intentional.” Sabatinelli v. Butler, 363 Mass. 565, 567 (1973). See also, Worcester Ins. Co., supra at 410. More to the point, while the court can assume that George Doe intended to harm Paul and Jane Doe by sexually abusing them, the court cannot assume that George Doe intended to harm the plaintiffs-in-counterclaim by these actions. This is precisely the point emphasized in Worcester Ins. Co., supra at 413. The remaining Counterclaims are, therefore, reasonably susceptible of an interpretation that they state a claim covered by the Does’ policy.
The court has previously noted that “(a)lthough Massachusetts law does not yet provide an answer, the weight of authority places the duty to defend all counts on an insurer which has a duty to defend at least one count of a complaint...” Aetna Casualty & Surety v. Continental Casualty, 413 Mass. 730, 732, n.1 (1992) (citations omitted). See also Merrimack Mutual Fire Ins. Co. v. Nonaka, 414 Mass. 187, 191-92 (1993). It follows, then, that, in the present case, Horace Mann will have a duly to defend against all of the Counterclaims.
Horace Mann has also sought summary judgment concerning its duly to indemnify John and Jane Doe for any liability they may ultimately incur as a result of the Counterclaims. Such a determination would be premature. “An insurer must indemnify its insured when a judgment within the policy coverage is rendered against that insured.” Boston Symphony Orchestra v. Commercial Union Ins., 406 Mass. 7, 10 (1989). Since there is no way of knowing at this stage what damages, if any, John and Jane Doe will ultimately be liable for, the court cannot determine whether such damages would be covered by the Does’ policy. Hence, summary judgment on this point at this juncture is unwarranted.
ORDER
For the reasons outlined above, the plaintiffs motion for summary judgment is DENIED. The plaintiff is further ORDERED to defend John and Jane Doe on all counts of the counterclaim in the underlying action.

 Civil Action No. 91-0315 (Middlesex Superior Court). The two actions have subsequently been consolidated.

 With the exception of the plaintiff, all of the parties involved in this action are referred to by pseudonyms. See this court’s order (Sullivan, J.) dated January 17, 1991 in consolidated case No. 91-0315 (Middlesex Superior Court).

 It is unclear from the parties’ submissions whether George Doe was also adopted by John and Jane Doe. The issue is not, however, relevant to this motion.

 Although the plaintiff has not addressed this exclusion directly in its motion for summary judgment, both parties refer to this exclusion (and cases citing similar exclusions) throughout their memos.

 Even if George was not formally adopted, he was certainly a person under the age of 21 who was under John and Jane Doe’s care. George would also be covered by this exclusion.

 This is true because the losses envisaged would be no different in an action for contribution than for the underlying claims that gave rise to the contribution claim.