Connolly, J.
The following action was brought by Stephen Shamban, on behalf of Pedro and Laurie Flores (the Floreses), seeking damages against the Worcester Insurance Company (Worcester) for breach of contract arising from Worcester’s failure to provide coverage under their Homeowners’ Insurance Policy after an accident involving their son. Both parties filed motions for summary judgment disputing whether Worcester had a duty to defend the Floreses in the underlying tort action. After a hearing on the motions and a review of the parties’ memoranda of law and supporting submissions, the plaintiffs motion is allowed in part and denied in part. The defendant’s cross-motion for summary judgment is denied in part and allowed in part.
BACKGROUND
On June 14, 1990, Pedro Flores, Jr. (Pedro, Jr.) was operating a Kawasaki KX 125 trail bike at the former Brockton City Dump when he was involved in a collision with Frank Lima (Lima). As a result of this collision, Lima suffered serious injuries to his leg which required extensive medical treatment.
On June 15, 1992, a complaint was filed by Lima against Pedro, Jr.’s father, Pedro Flores, Sr. (Mr. Flores), alleging that Mr. Flores was negligent in allowing his son to operate the trail bike without adult supervision. On July 2, 1992, Mr. Flores reported the incident to his homeowner insurer, Worcester Mutual Insurance Company (Worcester).
On July 23,1992, Worcester notified Mr. Flores that no coverage would be available under the policy. The letter stated that Worcester had conducted an investigation and although Pedro, Jr. “would be considered an ‘insured’ under the policy, was the owner of the ‘dirt bike’ which is not subject to motor vehicle registration, and was operating the bike off of [the] resident location, [the] Homeowner Policy would not provide coverage for this loss.” As a result, Worcester declined to provide a defense or indemnification for the loss and suggested that Mr. Flores contact his own personal attorney. In its support, Worcester cited to the “Exclusions” section of the policy which it believed controlled the claim.[2]
On February 11, 1993, an amended complaint was filed on behalf of Lima which essentially joined Pedro, Jr.’s mother, Laurie Tavares (Mrs. Flores) alleging the same theory of liability as against Mr. Flores. Mrs. Flores, however, never forwarded the amended complaint to Worcester. The Floreses hired William J. Quaglia (Quaglia) as their personal attorney to handle the allegations brought by Lima. On October 1, 1993, Quaglia’s motion to withdraw for lack of funds was granted. The Floreses continued pro se.
A trial date was set for January 20, 1994. On the date of trial, the Floreses failed to appear and a default judgment was entered against them. Lima then moved for an assessment of damages. On March 11, 1994, the Floreses appeared at the hearing and damages were awarded in the amount of $422,433.01.
On May 30, 1996, Attorney Jeffrey Coniaris on behalf of Mr. Flores sent Worcester a 93A demand letter seeking the sum of $100,000 for the loss of Mr. Flores’ home, $532,278 representing the amount of the earlier judgment plus interest, $250,000 for mental anguish and emotional suffering, and $5,750 in attorney fees incurred as of that date.[3] investigation, it determined that the Floreses were not entitled to be defended or to indemnification under the Homeowner’s Policy.
The Floreses subsequently filed an eight-count complaint and jury claim against Worcester which is the subject of the present litigation.[4]
DISCUSSION
I.
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law." Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
*603 A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [t]he motion.” Pederson, 404 Mass. at 17. “[T]he opposing party can not rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved,” summary judgment shall be granted to the party entitled to judgment as a matter of law. See Cassesso, 390 Mass. at 422. The interpretation of an insurance policy is a question of law for the reviewing court. Cody v. Connecticut General Life Ins. Co., 387 Mass. 142, 146 (1982).
II.
A. Liability of Worcester: Duty to Defend
“(T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.” Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983) (citations omitted): see also Continental Casualty Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146 (1984). “[T]he underlying complaint need only show, through general allegations, a possibiliiy that the liability claim falls within the insurance coverage.” Sterilite Corp., 17 Mass.App.Ct. at 319, quoting Union Mut. Fire Ins. Co. v. Topsham, 441 A.2d 1012, 1015 (Me. 1982). Moreover, when the scope of coverage is unclear, the policy should be read so as to provide coverage to the insured. SCA Services, Inc. v. Transportation Ins. Co., 419 Mass. 528, 532 (1995). Any ambiguity should be construed against the insurer.
“[A]n insurance company’s duty to defend is broader than its duty to indemnify.” Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989). “The duty to defend, however, is antecedent to, and independent of, the duly to indemnify.” Id., citing Magoun v. Liberty Mut. Ins. Co., 346 Mass. 677, 681-82 (1964).
Several provisions in the Flores’ Homeowner’s Policy are relevant to this dispute. One such provision which covers personal liability provides that:
If a claim is made or a suit is brought against an insured[5] for damages because of bodily injury or property damages caused by an occurrence to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the insured is legally liable: and
2. provide a defense at our expense by counsel of our choice . . .
Another provision relied on by Worcester to deny coverage to the Floreses provides that:
1. Coverage E — Personal Liability and Coverage F — Medical Payment to Others do not apply to bodily injury or property damage . . .
e. Arising out of:
(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured.
This exclusion does not apply to:
(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
(a) not owned by an insured; or
(b) owned by an insured and on an insured location.
The final relevant provision of the policy is entitled “Severability of Insurance” and provides that “[t]his insurance applies separately to each insured.”
Worcester, in its opposition to the Flores’ motion for summary judgment and in its own motion for summary judgment, contends that under the plain meaning of the subject exclusion, no coverage is available to the Floreses in the underlying tort action brought by Lima. Worcester argues that even the existence of the severability of insurance clause does not affect the applicability of the motor vehicle exclusion. Essentially, Worcester’s position is that because the complaint and amended complaint in the underlying action alleges that Pedro, Jr., an insured under the policy, owned and operated the trail bike that collided with Lima, then the motor vehicle exclusion precludes every insured under the policy from obtaining coverage arising from that collision. In support of its position, Worcester points to what it says is clear and unambiguous language contained in the motor vehicle exclusion provision. In the applicable section it states that “[t]his exclusion does not apply to: (2) [a] motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and (a) not owned by an insured; or (b) owned by an insured and on an insured location.” (Emphasis in Homeowner’s Policy.) Worcester contends that the term “an insured” under its plain meaning would include Pedro, Jr. Accordingly, Worcester states that coverage would only be available to the Floreses under subsection (b). However, since the collision occurred *604 at the old Brockton City Dump, and not on “an insured location,”[6] then the Floreses would not be entitled to be defended by Worcester nor would they be entitled to indemnification.
It is undisputed that both Mr. and Mrs. Flores are named insureds under the Homeowners’ Policy. It is also undisputed that Pedro, Jr. is an unnamed insured under the policy. With that in mind, this Court concludes that the issues dealing with the motor vehicle exclusions are governed by the decision in Worcester Mutual Ins. Co. v. Marnell, 398 Mass. 240 (1986). Like Marnell, the resolution of this case depends on an interpretation of the motor vehicle exclusion in light of the severability of insurance clause. See id. at 242.
In Marnell, the Marnells sought coverage from Worcester Mutual under their homeowner’s policy when a plaintiff filed a negligence suit against them for failing to supervise a party of their son’s. Worcester subsequently sought a declaratory judgment stating that it was not required to defend and indemnify the Marnells based upon the motor vehicle exclusion in the policy. The policy also contained a severability of insurance provision. The Supreme Judicial Court held that the severability clause required that each insured was to be treated as having a separate insurance policy and the term “insured” referred only to the person claiming coverage under the policy. Marnell, 398 Mass. at 244. Since neither parent owned or operated the motor vehicle that was involved in the accident, the motor vehicle exclusion was inapplicable to them and did not preclude them from receiving coverage under the policy. Id. at 244-45. The court reasoned that this interpretation gave reasonable meaning to both the motor vehicle exclusion and the severability clause:
Under our construction of the policy, the motor vehicle exclusion prevents the homeowners’ policy from providing additional insurance, without a premium, to an insured when a motor vehicle owned or operated by that person is involved in an accident causing bodily injuries or property damage. At the same time, the purpose of the severability of insurance clause is served because coverage is extended to insureds who neither owned nor operated the motor vehicle involved in the accident.
Id. at 245.
In Marnell, the insurance policy referred to “any insured” whereas the policy in this case refers to “an insured.” The Supreme Judicial Court noted that ”[a]n interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable.” Marnell, 398 Mass. at 245, quoting Sherman v. Employers’ Liab. Assurance Corp., 343 Mass. 354, 357 (1961). Accordingly, the court reasoned that even though its interpretation of the policy rendered the word “any” in the motor vehicle exclusion “superfluous, the construction urged by [the insurance company] would render the entire severability of insurance clause meaningless.” Marnell, 398 Mass. at 245; see also Desrosiers v. Royal Ins. Co. of America, 393 Mass. 37, 40 (1984). Similarly, the interpretation of the motor vehicle exclusion in the case at bar offered by Worcester would likewise render the severability of insurance clause meaningless. Accordingly, since it is undisputed that neither Mr. or Mrs. Flores owned nor operated the trail bike that was involved in the collision with Lima, the provision excluding coverage for bodily injuries arising out of an insured’s ownership or use of a motor vehicle does preclude Mr. and Mrs. Flores from receiving coverage under their Homeowner’s Policy. Because Worcester failed to defend the Floreses in the underlying action, it is liable for the judgment rendered against the Floreses.[7]
Worcester could have taken preliminary steps in order to determine whether it had a duty to defend the Flores. The ”[a]vailability of an action for declaratory relief should not be ignored by insurance companies. The existence of the duty to defend can be established quickly and efficiently in such an action when there is a question'as to the applicability of an insurance policy.” Boston Symphony Orchestra, 406 Mass. at 15-16. No such action, however, was taken by Worcester.
B. Liability of Worcester: Duty to Indemnify
The next issue is the extent of Worcester’s liability for their failure to defend the Floreses in the underlying tort action.
“An insurer must indemnify its insured when a judgment within the policy coverage is rendered against that insured." Boston Symphony Orchestra, Inc., 406 Mass. at 10. Since Worcester refused to provide a defense in the underlying action and a judgment was subsequently entered against the Floreses, then Worcester has the burden of proving that the claim was not within the policy coverage. It did not, therefore Worcester is obligated to pay the Floreses damages which amount to the judgment ($422,443.01) plus interest.[8]
III.
The Floreses finally contend that Worcester’s failure to defend them in the underlying tort action amounted to unfair and deceptive acts or practices under G.L.c. 93A, §§2, 9 and G.L.c. 176D, §§3(9)(a) and (n). They assert that this refusal was clearly unreasonable because, in their opinion, case law mandated that coverage was available under the policy. Moreover, they allege that Worcester’s initial letter on July 23, 1992, stating that coverage was not available, was misleading and disguised the coverage issues, particularly with respect to the severability of insurance clause.
Chapter 93A makes it unlawful to engage in ”[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . .” Moreover, under c. 176D, §3(9)(a) and *605 (n), an unfair claim settlement practice includes “(m)isrepresenting pertinent facts or insurance policy-provisions relating to coverages at issue,” or “[flailing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.” G.L.c. 176D, §§3(9)(a) and (n).
An insurance company may expose itself to liability under G.L.c. 93A where it refuses to defend one of its insureds and such refusal is unreasonable or in bad faith. See Boston Symphony Orchestra, Inc., 406 Mass. at 14-15. Finding bad faith should be made only “in the rare and exceptionally egregious case ...” Parker v. D’Avolio, 40 Mass.App.Ct. 394, 402 (1996). Bad faith is “not simply bad judgment.” Id., quoting Spiegel v. Beacon Participations, Inc., 297 Mass. 398, 416 (1937). “It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will.” See Parker, 40 Mass.App.Ct. at 402, quoting Spiegel, 297 Mass. at 416.
In the case at bar, there is no evidence of any bad faith or ulterior motives in Worcester’s denial of coverage under the Homeowner’s Policy. Although Worcester incorrectly interpreted the insurance policy, its interpretation was not unreasonable. Worcester based its interpretation on what it says was the clear language of the policy. “A plausible, reasoned legal position that may ultimately turn out to be mistaken — or simply, . . . unsuccessful — is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D.” Guity v. Commerce Ins. Co., 36 Mass.App.Ct. 339, 343 (1994) (citations omitted). Further, “[liability under c. 176D and c. 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous.” Id., quoting Pediatricians, Inc. v. Provident Life & Acc. Ins. Co., 965 F.2d 1164, 1173 (1st Cir. 1992). Accordingly, this Court holds that Worcester did not engage in any unfair or deceptive acts in this case and multiple damages are not appropriate.
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiff, Stephen E. Shamban’s, as Trustee of the Bankruptcy Estate of Pedro A. Flores, Sr. and Laurie Tavares, Motion for Summary Judgment against Defendant as to Liability for Breach of Contract and for M.G.L.c. 93A Violations be ALLOWED as to coverage issues and DENIED as to 93A violations. It is further ORDERED that defendant, Worcester Insurance Company’s Cross-Motion for Summary Judgment be DENIED as to coverage issues and ALLOWED as to 93A violations.

The applicable “Exclusions” section is set out in detail below.

In early 1996, Mr. Flores filed a Chapter 7 Bankruptcy Petition.

The counts alleged in the complaint included Worcester’s failure to defend the Floreses (Counts I and II), Worcester’s failure to indemnify the Floreses (Counts III and IV), declaratory relief (Counts V and VI), and alleged 93A violations against Worcester (Counts VII and VIII).

Under the policy, “ ‘[¡insured’ means you, and residents of your household who are:
a. your relatives: or
b. other persons under the age of 21 and in the care of any person named above."

In the Homeowner’s Policy, the phrase “insured location” essentially means the Floreses’ residence and surrounding property they own.

Worcester’s second argument relating to the cause of action alleged in the underlying complaint need not be fully analyzed. Worcester claims that Lima’s allegation of negligent supervision against the Floreses arose out of the use and ownership of the trail bike unlike in Marnell where the negligent supervision arose out of the home. The “Severability of Insurance” clause in the Floreses’ Homeowners Policy, however, renders the motor vehicle exclusion inapplicable to them.

Worcester has asserted defenses to the coverage action including Mr. Flores’s failure to disclose as sets in his bankruptcy petition, laches, and Mrs. Flores’s failure to notify Worcester of the suit against her. The Court, however, does not find any of these defenses persuasive.