Toomey, J.
St. Paul Fire and Marine Insurance Co. (“St. Paul”) intervened in this action brought by plaintiff, Daniel Kilgore (“Kilgore”), against defendants, Thomas Bahlo (“Bahlo”) and Resumix, Inc. (“Resumix”). St. Paul now moves for summary judgment and requests a declaration from the Court that St. Paul has no duty to defend Bahlo or Resumix on the ground that Kilgore’s complaint does not establish potential liability under the comprehensive general liability policy St. Paul issued to Resumix (“the policy”). Defendants cross-move for summary judgment *414 seeking a declaration that St. Paul is obligated to defend them as allegations in Kilgore’s complaint create potential liability under the policy. For the reasons set forth below, St. Paul’s motion is allowed, and Resumix and Bahlo’s cross-motion is denied.
BACKGROUND
The following facts are undisputed. In May, 1992, Bahlo, then an employee of Resumix, hired Kilgore to work at Resumix. Kilgore had previously worked at Digital Equipment Corporation. Three months later, in August, 1992, Bahlo informed Kilgore that Kilgore was terminated. Thereafter, in April, 1994, Kilgore sued defendants claiming in his complaint: (I) breach of contract for employment: (II) breach of contract for year to year employment; (III) breach of contract; (IV) wrongful termination — contract; (V) negligent breach of contract term; (VI) intentional infliction of emotional distress; (VII) tortious interference with employment relationship and/or malicious procurement of discharge; (IX) wrongful termination — tort; (X) negligence; (XI) unlawful civil conspiracy; and (XII) promissory estoppel.[1]
On January 14, 1997, defendants, acting pursuant to the policy, delivered Kilgore’s complaint to St. Paul and requested that St. Paul defend them against Kilgore’s claims. In the policy, St. Paul had agreed to defend any claim or suit for covered injuries or damages made or brought against any protected person even if any of the allegations of such-claim or suit were groundless, false or fraudulent. That duly to defend was subject to certain definitions and exclusions contained in the policy. On February 24, 1997, St. Paul notified defendants that it had no duty to defend them because defendants’ decision to terminate Kilgore was intentional and, therefore, did not create potential liability under the policy.
DISCUSSION[2]
An insurer has a duty to defend a third-party complaint against an insured when “the allegations of the complaint are ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms.” Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983), reversed on other grounds 397 Mass. 837 (1986). "In order to give rise to the duty to defend, the underlying complaint need show only a possibility of coverage.” Camp Dresser & McKee, Inc. v. The Home Ins. Co., 30 Mass.App.Ct. 318, 322 (1991). The duty to defend is “based not only on the facts alleged in the complaint, but also on the facts that are known or readily knowable by the insurer.” Desrosiers v. Royal Ins. Co., 393 Mass. 37, 40 (1984); Terrio v. McDonough, 16 Mass.App.Ct. 163, 167 (1983). Specifically, “the process is not looking at the legal theory enunciated by the pleader but of ‘envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.’ ” Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 12-13 (1989), quoting Sterilite Corp., 17 Mass.App.Ct. at 318. “However, when the allegations in the underlying complaint ‘lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate’ or defend the claimant.” Timpson v. Transamerica Ins. Co., 41 Mass.App.Ct. 344 (1996), quoting Terrio, 16 Mass.App.Ct. at 168.
As a general rule, the policyholder bears the initial burden of proving coverage under the policy. Camp Dresser, 30 Mass.App.Ct. at 321. The burden then shifts to the insurer to prove the applicability of any exclusion to coverage. Id. At bar, defendants have failed to show that the allegations in Kilgore’s complaint and/or any facts known or readily knowable by St. Paul are “ ‘reasonably susceptible’ of an interpretation that they state ... a claim covered by the policy terms.” Sterilite, 17 Mass.App.Ct. at 318. Defendants have thus not borne their initial burden of proving coverage, and St. Paul need not prove the exclusion thereto. That failure of defendants’ case requires this Court to conclude that St. Paul has no duty to defend Bahlo or Resumix. We shall treat each defendant in turn.
1. Thomas Bahlo
Defendants have failed to prove that Bahlo is covered by the policy and is thus entitled to have St. Paul defend him. The policy requires that a person be a “protected person” in order to be covered under the agreement; the policy recites that the insurer will only “pay amounts that any protected person is legally required to pay as damages for covered bodily injury, property damage, or premises damage,... [or] covered personal injury.” (Emphasis added.)[3] The policy further provides that an employee of the insured' is a protected person “only for work done within the scope of [his] employment . . . [h]owever, no employee is a protected person for bodily injury or personal injury to . . . any fellow employee.” Assuming that Kilgore’s causes of action allege that defendants, including Bahlo, caused him bodily and/or personal injury, Bahlo, Kilgore’s fellow employee, is not a “protected person” as that term is defined by the policy.[4] And, even assuming, arguendo, that Bahlo is a protected person, St. Paul, for the reasons stated below relating to Resumix, has no duty to defend him.
2. Resumix, Inc.
The subject policy provides that St. Paul “will have the right and duty to defend any claim or suit for covered injury or damage made or brought against any protected person . . . even if any of the allegations of any such claim or suit are groundless, false or fraudulent.” Covered injuries include bodily and personal injuries. Defendants have failed to prove, however, that any bodily or personal injury alleged to have been suffered by Kilgore falls under the policy’s coverage.
a. Bodily injury
The policy provides coverage for “covered bodily injury . . . that... is caused by an ‘event.’ ” According *415 to the policy, “[bjodily injury means any physical harm, including sickness or disease, to the physical health of other persons . . . including] any of the following that results at any time from such physical harm, sickness, or disease: [mjental anguish!;] [e]motional distress!; and] [c]are, loss of services, or death.” An event is defined as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” Assuming the allegations in Kilgore’s complaint state a claim for bodily injury, those allegations are nevertheless not “reasonably susceptible” of an interpretation that Kilgore’s bodily injury was caused by an “event" or an “accident” within the contemplation of the policy.
All of the allegations contained in Kilgore’s complaint, including bodily injury, arose from his termination, an occurrence which does not constitute an “accident” or “event.” See, e.g., Smartfoods, Inc. v. Northbrook Prop. & Casualty Co., 35 Mass.App.Ct. 239 (1993) (termination of distribution agreements does not constitute an “accident,” but rather a “calculated business decision”). The word “accident” implies the unexpected. See American Heritage Dictionary 11 (3d ed. 1992). Resumix intended to terminate Kilgore. Kilgore’s discharge was therefore not an accident and not unexpected. As with the termination of the distribution agreements in Smartfoods, defendants made a “calculated business decision” when they discharged Kilgore. See Smartfoods, 35 Mass.App.Ct. at 242.
Defendants respond that an accident is merely any unexpected or unforeseen happening in the causal chain of events, and that, therefore, the negligent acts alleged by Kilgore, which defendants view as separate from his termination, indeed do constitute an accident. The negligence asserted by Kilgore’s complaint cannot, however, be separated from his discharge and is entirely related to and part of his termination, which, as stated above, constitutes intentional conduct and, consequently, a “non-event.” That the termination might have been generated by some degree of negligence does not convert such termination into an “event,” and, absent an “event,” there is no policy coverage for “bodily injury.” A review of the counts of the instant complaint demonstrates the point.
Counts I, II, and III state claims for breach of contract, alleging defendants terminated Kilgore in violation of the contract terms, and Count IV alleges wrongful termination in violation of the contract. Those four Counts clearly claim injury due to defendants’ termination of Kilgore, a “non-event” under the terms of the policy. Although Count V is entitled “negligent breach of a contract term” and alleges that defendants breached their contractual duties not to terminate Kilgore’s employment without just cause, without notice, and without warning prior to termination, the Count still alleges injury by reason of Kilgore’s termination. Defendants’ alleged failure to notify and warn is inextricably interwoven with Kilgore’s termination. That failure is, therefore, inseparable from and constitutes part of the “non-event" of termination. Contrast Horace Mann Ins. Co. v. Barbara B., 846 P.2d 792, 17 Cal. Rptr. 2d 210 (1993) (no evidence to compel the conclusion that nonsexual acts were inseparable from intentional sexual misconduct).
Count VI, intentional infliction of emotional distress, contemplates, by its very terms, intentional conduct and is incongruous with the unexpected or accidental. Count VII, tortious interference with Kilgore’s employment relationship with Resumix and malicious procurement of Kilgore’s discharge, alleges injury due to Kilgore’s termination, a calculated decision by Resumix, and thus not an “event” within the policy. Count IX, wrongful termination — tort, although phrased in terms of tort, alleges injury due to Kilgore’s discharge and, consequently, does not suggest an “event.” Count X, Kilgore’s negligence claim, alleges that defendants breached their duly to use due care in conducting evaluations of his performance and making decisions regarding his retention, promotion and tenure, thus injuring him. Again, although that Count is phrased in negligence terms, it does not allege acts separate from his termination and thus does not assert an “event.” Count XI, unlawful civil conspiracy, similarly alleges injury due to Kilgore’s termination, which is not an “event" within the policy. Count XII, promissory estoppel, incorporates the prior allegations and claims that defendants made misrepresentations related, by implication, to Kilgore’s job security. Those misrepresentations, if established, are also inseparable from Kilgore’s termination and, ergo, do not comprise an “event” as contemplated by the policy.
Because each of Kilgore’s eleven counts alleges that Kilgore’s injuries were caused by a “non-event,” to wit, either his termination or conduct inseparable from that termination, no aspect of Kilgore’s complaint is covered under the policy’s “bodily injury coverage” provisions.[5]
b. Personal injury
Defendants have failed to demonstrate that the policy covers any personal injury alleged by Kilgore. The policy provides coverage for “covered personal injury . . . that ... is caused by a personal injury offense . . .” A “personal injury offense” is defined by the pertinent portion of the policy as “libel or slander” or “making known to any person or organization written or spoken material that belittles the products, work or completed work of others.” Defendants, relying upon Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983), argue that Kilgore’s allegations, in his complaint, that he suffered loss of personal and business reputation as a result of defendants’ actions is “ ‘reasonably susceptible’ of an interpretation that they state ... a claim covered by the policy terms.” Defendants’ view of the instant complaint, however, stretches beyond the bounds of what is a “reasonably susceptible” interpretation of the complaint.
*416 The policy contains a broad duty to defend; St. Paul “will have the right and duty to defend any claim ... for covered injuries or damages [here, for libel, slander, or belittlement of work] made or brought against any protected person . . . even if any of the allegations of any such claim or suit are groundless, false or fraudulent.” But, St. Paul’s contractual duty does not avail defendants because Kilgore’s complaint contains no facts that could reasonably be interpreted as possibly stating a claim for libel or slander or for belittlement of his work. Kilgore does not allude to any statement made by defendants nor any publication of any such statement. Although Kilgore includes incidental language in each of his eleven counts to the effect that he has incurred losses to his personal and business reputation, those passing references are insufficient, without more, to put St. Paul on notice that Kilgore presents even the possibility of a libel, slander or belittlement ofwork claim and, thus, the possibility of coverage.
The Supreme Judicial Court’s opinion in Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7 (1989) (hereinafter “BSO”), is not to the contrary. In BSO, the plaintiff cancelled an appearance by Vanessa Redgrave. Ms. Redgrave sued for damages, including loss to personal and business reputation. In a demand letter and the complaint, both of which were forwarded to the insurer, Ms. Redgrave stated that she had lost business opportunities as a result of plaintiffs cancellation. Additionally, the insurer, prior to plaintiffs tender of the complaint and demand letter, knew of the public cancellation and Ms. Redgrave’s belief that the cancellation subjected her to public ridicule and humiliation. Id. at 11. The Court held that the allegations of Ms. Redgrave’s complaint could reasonably be interpreted as stating a claim for “the publication of ‘other defamatory [or] disparaging material,’ ” which claim was covered under the subject policy. Id. at 12 (emphasis in original).
The facts of the case at bar are quite different from those that controlled in BSO. Kilgore neither alleged nor implied a defamatory utterance by defendants nor was there any evidence that St. Paul had knowledge of the gravamen of Kilgore’s causes of action from sources other than Kilgore’s filings. BSO is, therefore, not a persuasive precedent for the proposition that the instant complaint created a duty to defend because neither Kilgore’s complaint nor any other facts could reasonably be interpreted as stating a claim for libel, slander or belittlement of his work.
Even Kilgore’s deposition testimony, wherein he' stated that he suspected that Resumix defamed him and did something to injure his reputation as people were no longer willing to do business with him (Deposition of Daniel Kilgore dated June 20, 1997, at 23-24), is insufficient to be “reasonably susceptible” of an interpretation that Kilgore might be foreshadowing a claim for libel, slander or belittlement of his work product. Kilgore failed, in the deposition, to allude to specific instances of possible defamation, and he was not able to recount any statements, whether defamatory or not, that were related to him or to his work. Additionally, when asked whether, after his termination, he became aware of any Resumix action that injured his ability to gain comparable employment, he answered “Not knowingly, I don’t know.” Id., at 30. Those statements demonstrate that Kilgore presented, in his complaint and otherwise, no facts which are “reasonably susceptible” of an interpretation that Kilgore might seek recovery for libel, slander or for belittlement of his work.[6] Thus, no claim for “personal injury” triggering a duty on St. Paul to defend is suggested by this record.[7]
CONCLUSION
Defendants have failed to show that the allegations in Kilgore’s complaint and any facts known or readily knowable by St. Paul even suggest a possibility of coverage under tire policy. Compare Terrio, 16 Mass.App.Ct. 163 (where the plaintiff in the underlying case expressly disavowed a negligence theory, which was covered by the policy, and introduced no evidence of negligence, the court held no duty to defend). This Court will declare, therefore, that St. Paul has no duty to defend Bahlo or Resumix upon the complaint at bar.
ORDER
It is hereby ORDERED that St. Paul’s Motion for Summary Judgment is ALLOWED, and Resumix and Bahlo’s Cross-Motion for Summary Judgment is DENIED.

The complaint, dated April 21, 1994, does not contain a Count VIII.

Although St. Paul refers to a potential choice of law issue in its memorandum in support of its opposition to defendants’ cross-motion, at the motion hearing on March 10, 1998, the parties indicated that there were no choice of law issues. This Court notes also that the result would be the same under both Massachusetts and California law. Accordingly, the instant decision will rest upon Massachusetts law.

Defendants do not assert that Kilgore claimed any property or premises damages. Accordingly, the Court restricts its present inquiry to bodily and personal injuries.

Although defendants argue that Bahlo may have committed acts after Kilgore’s termination and, thus, is a “protected person” as to those acts, the record is completely devoid of any such allegations of post-termination conduct by Bahlo.

As defendants have not shown that Kilgore's alleged bodily injury was caused by an “event,” the Court need not address the parties’ additional arguments regarding the exclusion for intentional bodily injury. See Camp Dresser & McKee, Inc. v. The Home Ins. Co., 30 Mass.App.Ct. 318, 321 (1991) (insured bears initial burden of proving coverage under the policy).

Contrary to defendants’ contention, the mere possibility that Kilgore may amend his complaint to state a claim for libel, slander or belittlement of work is, without more, insufficient to create a duty to defend as it is pure speculation.

As with the bodily injury claim, the Court need not address the exclusions asserted by St. Paul as defendants have not satisfied their burden of proving coverage. See, supra, note 5.