## Preferred Mutual Insurance Company vs. James G. Gamache & another.[1]

No. 95-P-685.

Bristol. September 18, 1996. - February 5, 1997.

Present: Ireland, Laurence, & Flannery, JJ.

Further appellate review granted, 424 Mass. 1107 (1997).

*Insurance*, Homeowner's insurance, Construction of policy, Insurer's obligation to defend. *Intentional Conduct. Words*, "Intentional act," "Accident."

A provision in a homeowner's insurance policy excluding from liability coverage bodily injury resulting from an "intentional act" was construed to be applicable only to injuries resulting from the insured's acting with the intent to injure and not to injuries resulting merely from the insured's intentional acts without a specific intent to harm, where the broader interpretation of the phrase could vitiate the policy's coverage for accidents. [197-200]

In a civil action in which an insurer sought a declaration that it had no duty to indemnify its insured, summary judgment was incorrectly granted in favor of the insurer, where there remained disputed material issues with respect to the nature of the insured's intent when he injured another [200] and whether his intoxication affected his capacity to form an intent to harm [200-201].

In a declaratory action, the plaintiff insurer was not entitled to summary judgment on the issue of indemnification, where it could not be inferred as matter of law that the insured intended to cause harm by his act so as to fall within an exclusion from coverage under the policy in question. [201]

Where the allegations of a complaint in a tort action were reasonably susceptible of an interpretation that they stated a claim under an insurance policy, the insurer had a duty to defend and was bound by the ensuing judgment. [201-203]

Civil action commenced in the Superior Court Department on August 20, 1993.

The case was heard by *Charles J. Hely*, J., on motions for summary judgment.

[1]Henry P. Andrade, Jr.

*J. Michael Conley* for Henry P. Andrade, Jr.

*Raymond A. Letourneau* for James G. Gamache.

*Edward L. Kirby, Jr.,* for the plaintiff.

FLANNERY, J. James Gamache and Henry Andrade, Jr., appeal from a summary judgment entered for Preferred Mutual Insurance Company (Preferred) declaring that Preferred had no duty to defend or indemnify Gamache for claims under a homeowner's policy for injuries sustained by Andrade, a New Bedford police officer, as he arrested Gamache. A Superior Court judge decided that the policy's coverage exclusion for injuries resulting from the intentional act of an insured relieved Preferred from its duty to defend and indemnify Gamache. We vacate the judgment and remand the case for further proceedings consistent with this opinion.

Viewed in the defendants' favor, the summary judgment record reveals the following facts. At approximately 1:30 A.M., on September 10, 1991, Officer Andrade and another New Bedford police officer were dispatched to the scene of a fight. Upon arriving at the scene, Andrade and the other officer saw a person lying on the ground holding his head. Nearby, in the grass on the side of the road, stood Gamache, bleeding from an injury to his head. Gamache yelled and swore at the officers. As the officers approached Gamache, he attempted to keep them at bay by swinging his arms and kicking his feet. He then dropped to the ground and continued kicking his feet. Despite his resistance and strength, the officers positioned Gamache face down on the ground. However, he continued flailing his arms and legs. As Andrade prepared to handcuff him, Gamache grabbed Andrade's utility belt or waistband and attempted to hoist himself to his feet. Andrade lost his balance, twisted his left knee, and fell to the ground screaming and grabbing his knee.

After several more unsuccessful attempts, Andrade and his partner subdued and handcuffed Gamache. The officers seated Gamache in the back of their police car and headed to the station house. During the trip Gamache continued screaming, swearing, and kicking the interior of the car. He also repeatedly spat on the officers and the inside of the car.[2]

In January, 1993, Andrade brought a civil action against

[2]Throughout the incident, both officers noticed that Gamache's speech was slurred, his eyes were glassy and bloodshot, he smelled of alcohol, his

Gamache to recover damages for the injury to his knee.[3] The complaint and amended complaint alleged that Andrade was injured during the arrest by the "negligent, reckless and/or wanton conduct of [Gamache]." Gamache was insured as a household member under his parents' homeowner's policy with Preferred.[4] Although notified of the action, Preferred refused to defend Gamache against Andrade's claims.[5] Prior to trial, Andrade and Gamache entered into a stipulation in which Gamache admitted liability. The parties also stipulated that "[s]uch liability is derived from the defendant's negligent or reckless conduct and not from alleged intentional acts or conduct on the part of the defendant." Following a hearing on June 2, 1994, a Superior Court judge entered judgment for Andrade awarding him $75,000 in damages.

On August 20, 1993, Preferred filed its complaint in this action seeking a declaratory judgment that it did not have a duty to defend or indemnify Gamache against Andrade's claim. In October, 1994, the parties cross-moved for summary judgment. The motion judge concluded that despite Gamache's apparent intoxication, no fair-minded jury could conclude that Gamache's resisting arrest and grabbing Andrade was not intentional conduct. Accordingly, relying on the policy's coverage exclusion for "bodily injury . . . which results directly or indirectly from . . . an intentional act of an insured" (emphasis omitted), the judge entered summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824

---

movements were awkward and uncoordinated, and he was very unsteady on his feet. Both officers characterized Gamache as being out of control.

[3]In August, 1993, Andrade filed an amended complaint adding a second count for loss of consortium on behalf of his wife, Brenda Andrade. Preferred settled the loss of consortium claim.

[4]The policy defines an insured as "you" and "your relatives if residents of your household" (emphasis omitted). Preferred does not dispute that Gamache is an insured under the policy.

In pertinent part the policy provides that "[w]e pay, up to our limit, all sums for which an insured is liable by law because of bodily injury . . . caused by an occurrence to which this coverage applies. We will defend a suit seeking damages if the suit resulted from bodily injury . . . not excluded under this coverage." (Emphasis omitted.)

[5]On June 15, 1993, Gamache pleaded guilty in District Court to one count of disturbing the peace, G. L. c. 272, § 53, and two counts of assault and battery upon a police officer, G. L. c. 265, § 13D. Relying on these guilty pleas, Preferred concluded that it did not have a duty to defend or indemnify Gamache.

(1974), and declared, pursuant to G. L. c. 231A, § 1, that Preferred had no duty to defend or indemnify Gamache. Andrade and Gamache appealed.

1. *Definition of "intentional act."* We must decide whether a homeowner's insurance policy's exclusion from liability coverage for injuries resulting from the insured's intentional acts refers to the insured's intent to injure, or merely to the insured's intent to act. The exclusion in the Gamaches' policy provides that "[t]his policy does not apply to bodily injury . . . which results directly or indirectly from . . . an intentional act of an insured" (emphasis omitted). As noted by the motion judge, the wording of this exclusion differs from intentional acts exclusions previously considered by the Supreme Judicial Court and interpreted as focusing on the insured's intent to injure. See *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. 81, 83 (1984) (excluding coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the [i]nsured"); *Newton* v. *Krasnigor*, 404 Mass. 682, 683 (1989) (excluding coverage for "property damage . . . which is expected or intended by the insured"); *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. 781, 783 (1992) (excluding coverage for "bodily injury or property damage . . . which is expected or intended by the insured"); *Doe* v. *Liberty Mut. Ins. Co.*, 423 Mass. 366, 369 n.6 (1996) (same). Relying solely on the wording of the exclusion, the judge determined *Abernathy* and *Talhouni* to be inapposite. The judge, therefore, framed the critical issue to be not whether the insured intended the injury, but only whether the injury resulted from an intentional act of the insured. Applying the plain language of the exclusion, the judge concluded that no fair-minded jury could conclude that Gamache's resisting arrest and grabbing Andrade's waistband or belt was not intentional conduct excluded from coverage.

The policy provides liability coverage for an "occurrence." The policy defines an "occurrence" as an accident. We broadly construe the word "accident." *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. at 83. The word "accident" commonly means "an unexpected happening without intention or design." *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, *supra* at 83, quoting *Beacon Textiles Corp.* v. *Employers Mut. Liab. Ins. Co.*, *supra* at 646. In construing policy exclusions for intentional injuries, the Supreme Judicial Court has stated

that "the resulting injury which ensues from the volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur." *Quincy Mut. Fire Ins. Co.* v. *Abernathy, supra* at 84. *Hanover Ins. Co.* v. *Talhouni, supra* at 784. Thus, when interpreting intentional injury exclusion clauses in policies providing liability coverage for "accidents," the Supreme Judicial Court has focused on the insured's intent to injure, not merely the insured's intent to act. *Ibid.*

Here, however, the policy excluded coverage for bodily injury resulting from an "intentional act," rather than for "injury . . . expected or intended by the insured." The phrase "intentional act," Preferred argues, is unambiguous. Accordingly, Preferred insists, the traditional focus on the insured's intent to injure is irrelevant. Rather, Preferred urges, and the motion judge agreed, the only relevant inquiry is whether the insured's act was volitional.[6] That is to say, if Gamache intended to grab Andrade, then his conduct was an "intentional act," excluded from the policy's coverage, regardless of whether he intended to injure him.

Andrade and Gamache, on the other hand, argue that under Massachusetts case law the phrase "intentional act" is ambiguous and, consequently, the exclusion should be construed in their favor as focusing on the insured's intent to cause harm. *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 700 (1990). Additionally, Andrade and Gamache contend that reading the phrase "intentional act" as incorporating all volitional acts is so broad that the exclusion would effectively nullify the policy's coverage for "accidents." We agree.

We strictly construe exclusions from insurance coverage and resolve ambiguities in the policy against the insurer. *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. at 83. Despite these basic principles, Preferred urges us to interpret the exclusion broadly to reach any volitional act of an insured.

Standing alone, the phrase "intentional act" may, as Preferred suggests, appear to be unambiguous. However, using the phrase "intentional act" as the basis for an exclusion

---

[6]Webster's Third New International Dictionary 2562 (1993) defines "volition" as "the act of willing or choosing."

in a policy that provides coverage for an "accident" — a word that has been interpreted to encompass injuries resulting from an insured's volitional act — produces ambiguity. Contrast *German Mut. Ins. Co.* v. *Yeager*, 554 N.W.2d 116, 117 (Minn. App. 1996) (construing the same exclusionary clause to be unambiguous, but holding that the clause precludes coverage "only where the insured intends to cause harm, not merely where the insured generally intends the act"). Merely substituting the phrase "intentional act" for "injuries . . . expected or intended by the insured" is not enough to divert our attention from the insured's intent to cause harm.[7]

"If there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it." *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. at 700, and cases cited therein. The intentional act exclusion at issue here may be rationally interpreted as focusing on either the insured's intent to act or the insured's intent to cause harm. Accordingly, interpreting the exclusion in favor of the insured, we conclude that the intentional act exclusion should be interpreted, consistently

---

[7]This focus only on intentional acts was the approach adopted by the motion judge. The judge rejected Preferred's argument that Andrade's injuries did not result from an "accident" as defined by *Abernathy* and *Talhouni*. The judge then, however, separately addressed the applicability of the exclusion. The judge did not discuss the inconsistency between the scope of coverage and the scope of the exclusion.

Interpreting exclusions for intentional acts, regardless of the wording of the exclusion, has long been intertwined with interpreting the word "accident." See generally 7A Appleman, Insurance Law & Practice §§ 4492, 4492.01 (1979) (discussing history of intentional acts exclusions as used by the insurance industry, and the various problems courts have had interpreting them); Annot., Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured, 31 A.L.R.4th 957, 971-972 (1984) (same). Viewed thus, the motion judge should have considered the intentional act exclusion within the context of the policy coverage.

Moreover, contrary to Preferred's argument, the phrase "intentional act," and in particular the word "intentional," do not have fixed legal meanings. The legal definitions of the word "intent" or "intentional" vary depending on the area of law at issue. See, e.g., *Sheehan* v. *Goriansky*, 321 Mass. 200, 204-205 (1947) (discussing how conduct construed to be intentional in criminal law can be construed as accidental when interpreting an insurance policy); Restatement (Second) Torts § 8A (1965) comment a (defining intent in "reference to the *consequences* of an act rather than the act itself" [emphasis added]).

with *Abernathy*, as focusing on the insured's intent to cause harm.

Additionally, the broad interpretation of the exclusion advanced by Preferred has no limiting principle: any volitional act of the insured could be an intentional act excluded from coverage. See, e.g., *J. D'Amico, Inc.* v. *Boston*, 345 Mass. 218, 223 (1962) (noting that what is held to be an "accident" may occur from a physical act which is intentional and voluntary, where there is no intent to cause damage). This broad interpretation could vitiate the policy's coverage for accidents. We do not endorse this interpretation. See *Liberty Mut. Ins. Co.* v. *Tabor*, 407 Mass. 354, 358 (1990) (stating that "[a] provision in an insurance policy [that negates] the very coverage that the policy purports to provide . . . is void as against public policy"). Construing "intentional acts" in the abstract, without reference to the likelihood of the injury caused by the act, is not useful in the insurance context. Where, as here, an insured's intent to cause harm is a disputed material fact, allowance of summary judgment is error.

2. *Inference of intent as matter of law.* Preferred argues that even if we interpret the exclusion as being triggered by the insured's intent to cause harm, as we have done, it nevertheless is entitled to summary judgment. Relying on the doctrine articulated in *Newton* v. *Krasnigor*, 404 Mass. at 685, 687-688; and *Worcester Ins. Co.* v. *Fells Acre Day Sch., Inc.*, 408 Mass. 393, 400 (1990), and reiterated in *Doe* v. *Liberty Mut. Ins. Co.*, 423 Mass. at 369-370, Preferred contends that we can infer Gamache's intent to cause harm as matter of law from Gamache's assault and battery on Andrade. We disagree.

Inferring intent to injure as matter of law in construing an exclusionary clause has been recognized in only three situations: an adult's unlawful sexual behavior toward a minor, *Worcester Ins. Co.* v. *Fells Acre Day Sch., Inc.*, supra; *Doe* v. *Liberty Mut. Ins. Co.*, supra; setting fire to a building, *Newton* v. *Krasnigor*, supra; and pushing a person down a staircase, *Terrio* v. *McDonough*, 16 Mass. App. Ct. 163, 169 (1983). Gamache's conduct here does not fall into any of these categories. Indeed, his grabbing Andrade's waist is arguably more neutral than the conduct at issue in *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. at 785-786 (indecent assault and battery), and *Quincy Mut. Ins. Co.* v. *Abernathy*, 393 Mass. at 87-88

(throwing a rock at a car window), in which the court held that the insured's intent to injure was a question for the fact-finder. Based on the record before us, we cannot infer as matter of law that Gamache intended to injure Officer Andrade.

3. *Disputed facts as to intent.* Relying on *Hanover Ins. Co. v. Talhouni, supra,* Andrade and Gamache argue that: Preferred had the burden of proving that Gamache intended to cause injury; Preferred neither submitted, nor pointed to, any rule 56(c) materials demonstrating Gamache's mental capacity; and, consequently, the trial judge erroneously concluded that "despite [Gamache's] intoxication, no fair-minded jury could conclude that [Gamache's] resistance and grabbing [were] not intentional." Preferred answers that *Hanover Ins. Co.* v. *Talhouni, supra,* is factually distinguishable from the present case and, therefore, its holding is inapplicable. That case involved an indecent assault and battery committed by a teenager, Talhouni, who was under the influence of LSD. The victim sued Talhouni and a jury awarded her damages. Talhouni sought indemnification under his parents' homeowner's policy with Hanover, and Hanover sought a declaration that it had no duty to indemnify Talhouni. In affirming the trial judge's denial of the declaratory relief sought by Hanover, the Supreme Judicial Court rejected Hanover's argument that Talhouni's intent to injure could be inferred as matter of law from the nature of his conduct; it concluded that a triable issue was Talhouni's "capacity to form intent." *Id.* at 785. The court, after noting that the insurer must show the insured intended to cause harm, adopted the rule followed by a majority of other jurisdictions that " 'intoxication may destroy, for purposes of the exclusion, the capacity to form the requisite intent.' " *Id.* at 786.

In light of our interpreting the policy exclusion in Gamache's policy as focusing on the insured's intent to cause harm, we view the principles articulated in *Talhouni* as applicable here. It is undisputed that Gamache had been drinking at the time of the incident, so we conclude that Gamache's mental capacity to form the requisite intent is a disputed material issue.[8]

4. *Duty to defend.* Andrade and Gamache argue that

[8]Andrade and Gamache also contend that they are entitled to summary judgment because Preferred proffered no evidence of Gamache's intent. We disagree. A genuine issue of material fact exists concerning Gamache's pos-

Preferred breached its duty to defend Gamache in the underlying tort action and, consequently, Preferred is bound by the underlying judgment. We agree. We determine an insurer's duty to defend by looking to the complaint and the insurance policy. *Doe* v. *Liberty Mut. Ins. Co.*, 423 Mass. at 369, citing *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984). See also *Sterilite Corp.* v. *Continental Cas. Co.*, 17 Mass. App. Ct. 316, 323-324 (1983). Contrast *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989) (stating that an insurer's obligation to defend is based on facts alleged in the complaint and those facts which are known to the insurer). The complaints in the underlying action here alleged that Andrade was injured as a result of Gamache's "negligent, reckless and/or wanton conduct." The policy excludes only injuries resulting from the insured's intentional acts. Negligent conduct cannot be intentional conduct. *Waters* v. *Blackshear*, 412 Mass. 589, 590 (1992). Likewise, when construing insurance coverage, wanton or reckless conduct is not the legal equivalent of intentional conduct. *Sheehan* v. *Goriansky*, 321 Mass. 200, 204-205 (1947). Contrast *Commonwealth* v. *Welansky*, 316 Mass. 383, 401 (1944) (noting that in the criminal law, wanton or reckless conduct is the legal equivalent of intentional conduct).[9]

Consequently, we conclude that the complaint's allegations were " 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy." *Continental Cas. Co.* v. *Gilbane Bldg. Co.*, 391 Mass. at 146. Compare *Timpson* v. *Transamerica Ins. Co.*, 41 Mass. App. Ct. 344, 350-353 (1996) (finding no duty to defend where the complaint clearly and unambiguously alleged intentional conduct

---

sible intoxication and its effect, if any, on his mental capacity. Thus, summary judgment is inappropriate. *Quincy Mut. Fire Ins. Co.* v. *Abernathy*, 393 Mass. at 86. *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991).

[9]Nor did Gamache's guilty plea to assault and battery relieve Preferred of its duty to defend Gamache. Unlike a jury's guilty verdict, a guilty plea is not conclusive of intent in a civil action; it is only evidence. *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 747 (1985). *Flood* v. *Southland Corp.*, 416 Mass. 62, 70 (1993). Additionally, as discussed above, the record indicates that Gamache had been drinking at the time of the incident, which could well further diminish the conclusiveness of the guilty plea regarding Gamache's intent.

and it neither expressly mentioned negligence nor implied it). Thus, Preferred had a duty to defend.

5. *Conclusion.* Having determined that Preferred had a duty to defend Gamache and that a genuine issue of material fact exists concerning the nature of Gamache's conduct, we vacate the judgment and remand this matter for further proceedings to determine whether Preferred has a duty to indemnify Gamache.[10]

*So ordered.*

---

[10]On remand, no weight need be given to the stipulation between Gamache and Andrade in the underlying action. We read the stipulation as stating only that Gamache's actions injured Andrade. The stipulation's conclusory statements, apparently included to ensure coverage under the Gamaches' policy, were not material facts essential to that judgment. See *Miller* v. *United States Fid. & Guar. Co.*, 291 Mass. 445, 448-449 (1935); *Lodge* v. *Bern*, 328 Mass. 42, 44-45 (1951).