Connon, Richard F., J.

INTRODUCTION

The plaintiff brought this action seeking declaratory judgment on a homeowner’s insurance policy issued by the defendant insurance company, specifically that under the said policy the defendant had a duly to defend. The defendant counterclaimed, also seeking a declaratory judgment on the same issue.

BACKGROUND

The plaintiff George Billings was one of five defendants in a suit that had been brought by Scott M. Peterson, Individually and as Trustee of the Peterson 1990 Real Estate Trust and Eric M. Peterson, Individually and as Trustee of the same trust.
This suit arose out of the defendants, including Billings, bringing an action against the Petersons to prevent the Peterson’s use and development of 33 acres of land that the 1990 Real Estate Trust owned in Barnstable County.
The Peterson’s complaint was in four counts: Count I, abuse of process; Count II, malicious prosecution; Count III, intentional infliction of emotional distress; and Count IV, negligent infliction of emotional distress.
As a result of the suit, Billings notified the defendant insurance carrier, in effect asking that it defend said action. The defendant, Massachusetts Properly Insurance Underwriting Association, responded, saying that the claims made by the Petersons do not constitute bodily injuiy as defined under the policy and that it “will take no action with respect to the complaint pending against you by Scott and Eric Peterson, Individually and as Trustees of the Peterson 1990 Real Estate Trust. We encourage you to obtain counsel of your own choosing and at your own expense to defend your interests in the subject civil action. MPIUA will neither defend nor indemnify you with respect to any of the allegations set forth in the complaint.”
Under Count I of Billings’ complaint (abuse of process), Billings alleges that by bringing the action against the Petersons the Petersons suffered damages in the reduction of the value of the real property and lost business opportunities. Under Count III (contract), that the defendant breached its contract with Billings by not defending the action brought by Petersons against Billings.

DISCUSSION

Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., *182 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
The interpretation of an insurance contract and the application of policy language to known facts presents questions of law for the judge to decide. See Sherman v. Employer’s Liability Insurance Corporation, 343 Mass. 354 (1961); Kelleher v. American Mutual Insurance Company, 32 Mass.App.Ct. 501, 503 (1992). The critical issue is whether the summary judgment record alleges “a liability arising on the face of the complaint and policy.” Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316 (1983). “The scope of an insurer’s duty to defend is based upon the facts that’s alleged in the complaint and those facts which are known to the insurer.” Boston Symphony Orchestra, Inc. v. Commercial Union Insurance Co., 406 Mass. 7 (1989). Specifically, “the process is one of envisaging what kinds of losses may be provided as lying within the range of the allegations of the complaint, and then seeing whether any loss fits the exception of protective insurance reasonably generated by the terms of the policy.” Sterilite Corp. v. Continental Cos. Co., supra, at 318. The duty to defend is broader than the duly to indemnify. See Liberty Mutual Insurance Co. v. SCA Servs., Inc., 412 Mass. 330 (1992). “The underlying complaint need only show through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.” Sterilite Corp. v. Continental Cas. Co., supra, at 319.
In deciding whether Massachusetts Property Insurance Underwriting Association had a duty to defend, the court must look only to the complaint and the policy. Continental Cas. Co. v. Gilbane Building Co.
There is no duty to defend if the complaint alleges only liability which the policy excludes from coverage. Terrio v. McDonough, 16 Mass.App.Ct. 163, 168 (1983). The interpretation of policy exclusions is a question of law to be determined by the court. Camp Dresser and McKee, Inc. v. Home Insurance Co., 30 Mass.App.Ct. 318 (1991). In this interpretation, the court is guided by three fundamental principals. Number one, an insurance contract, like other contracts, is to be construed according to the fair and reasonable meaning of its words . . . Two, exclusionary clauses must be strictly construed against the insurer so as not to defeat any intended coverage or diminish the protections purchased by the insured . . . and three, doubts created by an ambiguous words or provisions are to be resolved against the insurer. Camp, Dresser and McKee, Inc., supra. “An ambiguity exists in an insurance contract where the language contained therein is susceptible of more than one meaning . . . However, an ambiguity is not created simply because a controversy exists between the parties” each favoring a different interpretation. Jefferson Insurance Co. of New York v. Holyoke, 23 Mass.App.Ct. 472 (1987).
In applying exclusions, the Massachusetts courts have barred “coverage for non-accidental occurrences caused by the insured.” Kowalski v. Gagne, 914 Fed.2d 299, 304 1st Cir. (1990). The Supreme Judicial Court defines a non-accidental injuiy as one “where the result was actually not constructively intended, i.e. more than reckless. This standard requires a showing that the insured knew, to a substantial certainty, that bodily injuiy would result.” Quincy Mutual Fire Ins. Co. v. Abernathy, 393 Mass. 81. In order for the exclusion to apply, the crucial question is whether the insured “intended or expected to cause any personal injury, not whether he intended to cause the precise magnitude of the injuries sustained.” Newton v. Kraisignor, 404 Mass. 682 (1989).
Under the policy of insurance provided to the plaintiff by the defendant under “COVERAGE E - Personal Liability” it states:
If a claim is made or a suit is brought against an “insured” for damages because of “bodily injuiy or ’’property damage" caused by an “occurrence” to which this coverage applies, we will:
1. Pay up to our limit of liability for the damages for which the “insured” is legally liable . . .
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent..."
The policy defines occurrence as:
... an accident, including continuous or repeated exposure to substantially the same general harmful conditions which results during the policy period in:
a. “bodily injury”; or
b. “property damage.”
The term “bodily injuiy” is further defined:
“bodily injury” means bodily harm, sickness or disease, including required care, loss of services and death that results.
The plaintiff is claiming that the Petersons became physically sick as a result of the actions that were *183 brought by Billings along with the other four plaintiffs. The complaint that the Petersons filed was seeking recovery for the emotional harm and emotional distress, which does not constitute bodily injury. Allstate Insurance Company v. Diamant, 401 Mass. 654 (1988). In that suit, the Diamants were defendants in a lawsuit that was brought against them by Mary White. White alleged in her complaint that she was a tenured teacher with the Swampscott Public High School and that Andrea Diamant had been her student. Andrea Diamant received a failing grade in Algebra, a subject that White taught. The Diamants sent a letter to the principal of the Swampscott Public High School complaining that White was a psychologically damaged teacher who treated Andrea Diamant unfairly. The complaint also alleged that other defamatory letters and forms of communication were published by the Diamants. White’s complaint alleged three separate claims for defamation and one claim for intentional infliction of emotional distress. The court concluded that the claims made by White for emotional distress and injury to her reputation are not bodily injuries under the Allstate policy.
This court concludes that the term “bodily injuiy” is unambiguous and understood to mean hurt or harm to the human body, contemplating actual physical harm or damage to the human. Farm Bureau Mutual Insurance Company v. Hough, 136 Michigan App.Ct. 326 (1984). Although Peterson was emotionally injured that may have led to a physical illness, namely a heart condition, is not sufficient to provide coverage under the meaning of bodily injuiy.
For all of these reasons, the Plaintiffs Motion for Partial Summaiy Judgment is DENIED and the defendant’s Cross Motion for Summaiy Judgment is ALLOWED with respect to all counts and this matter is DISMISSED.