van Gestel, Allan, J.
This matter is before the Court on two motions for summary judgment: Royal Indemnity Company’s Motion for Summary Judgment on Cross-claim, Paper #33, and Massachusetts Bay Insurance Company’s Motion for Summary Judgment, Paper #39.

BACKGROUND

The underlying litigation, for the most part, seeks declaratory judgments as to whether two insurance carriers, Massachusetts Bay Insurance Company (“Mass Bay”) and Royal Indemnity Company (“Royal”), have defense or indemnity obligations to The Boston Beer Company or Samuel Adams Brewery Company, Limited (collectively, “Boston Beer”) in connection with certain class action lawsuits.
Between mid-February and mid-April 2005, five class action lawsuits (the “Class Actions”) were filed in five different states, alleging that the defendants — all manufacturers and marketers of alcoholic beverages — had illegally targeted underage drinkers in their marketing efforts. Boston Beer is among the defendants in the five suits. The suits are as follows:
1. Scioccheti v. Advanced Brands, et al, No. 102205 (Albany Co. Supreme Court, N.Y.);
2. Bertovich v. Advanced Brands, et al, C.A. No. 05-C-42M (Hancock Co. Cir. Ct., W.Va.);
3. Tomberlin v. Adolph Coors Co., et al, No. 05CV0545 Dane Co. Cir. Ct., Wise.);
4. Konhauzer v. Adolph Coors Co., et al, No. 05004875 (Cir. Ct. for 17th Jud. Cir., Fla.);
5. Alston v. Advanced Brands, et al, No. 05-509294 (Cir. Ct. for 3rd Jud. Cir., Mich.).[2]
With minor variations that are of no consequence for these purposes, the complaints in each of the Class Actions are identical. The individual complaints are massive, multifarious, internally inconsistent and flagrant abuses of the mandate for notice pleading such as in Mass.R.Civ.P. Rule 8(a). The complaints are long, rambling and anything but short and plain statements asserting a wide variety of claimed relief.
Both Mass Bay, whose policy covered only one of the applicable years in issue, and Royal, whose policies covered all of the other years, provided Commercial General Liability Coverage Forms and Liquor Liability Coverage Forms. The polices, again with inconsequential minor differences, are the same for these purposes.
Because of the necessity of comparing the claims in the complaint with the coverages in the policies, the Court here quotes from parts of the Tomberlin complaint and from the Royal policy.

Portions of the Tomberlin complaint.

This case arises from a long-running, sophisticated, and deceptive scheme by certain alcoholic beverage manufacturers [including Boston Beer] to market alcoholic beverages to children and other underage consumers. The primary purpose and effect of this ongoing scheme is to generate billions of dollars per year in unlawful revenue derived from sales of alcoholic beverages consumed by children and other underage consumers. This lawsuit seeks to force the Defendants to disgorge the profits these companies have made through the illegal sale and use of their products and to stop the abusive marketing practices that contributed to those illegal sales. [Para. 1]
* * * *
In addition to the human suffering inflicted on society, Defendants’ conduct has caused, and continues to cause, enormous economic injuries to the Plaintiff and the classes she seeks to represent. Parents and guardians in New York State[3] [sic] and throughout the country are victimized as billions of dollars in family assets are transferred to Defendants as part of the far-reaching illegal trade in alcoholic beverages. And underage drinkers themselves, cynically manipulated by sophisticated and well-financed advertising and marketing efforts directed at them, provide Defendants with billions of ill-gotten gains. [Para. 6]
* * * *
These indisputable facts, even without the numerous other factual allegations and legal claims contained in this complaint, establish a clear prima facie showing of wrongful, unjust, and illegal conduct by the defendants. For example, a company is unjustly enriched, at the veiy least, when it knowingly and systematically profits from the illegal and harmful trade in dangerous products to children. A company is also negligent, if not reckless and wanton, when it fails to take reasonable steps to avoid inducing or encouraging the illegal and harmful purchase and use of a dangerous product by minors . . . Additionally, a company creates, contributes to or maintains a public nuisance when it *634 deliberately engages in sophisticated marketing practices, designed to substantially increase the sales of dangerous products to minors, which offend public morals, interfere with the use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons. [Para. 34]
* * * *
Plaintiff . . . Tomberlin is a resident of the State of Wisconsin and is a parent. As a parent, she and her child have been injured and continue to be injured by the Defendants’ conduct as alleged herein. [Para. 37]
* * * *
Without limiting the generality of the foregoing, each of the Defendants directly or through agents acting within the scope of their authority has: (a) caused tortious damage by acts or omissions committed in the State of Wisconsin; . . . (d) manufactured, marketed, promoted, sold, or distributed their products in the State of Wisconsin; . . . [Para. 39]
* sfc * *
Plaintiff and class members claim damages, including punitive, treble or statutory damages, of less than $75,000 and specifically deny any attempt to state a claim under federal law. [Para. 40]
* * * *
(A) a Guardian Class consisting of all persons who were or are parents or guardians of children whose funds were used to purchase alcoholic beverages marketed by Defendants which were consumed without their prior knowledge by their children under the age of 21 during the period 1982 to the present (the “Class Period”), excluding Defendants and their affiliates, officers, directors, and employees. [Para. 59(A)]
* * * *
There exist numerous questions of law and fact common to the Classes, including: . . . (o) whether the injuries caused by Defendants’ wrongful conduct are outweighed by any countervailing benefits to society or competition; (p) whether Defendants used reasonable care to avoid inducing or encouraging the illegal and dangerous purchase and use of their products by underage consumers; . . . [Para. 62]
* * * *
Boston Beer willfully, intentionally, recklessly and negligently engages in extensive unfair and deceptive marketing efforts directed at underage consumers, including marketing efforts that represent that its products have characteristics, uses, benefits, and approvals with reference to underage drinkers that they do not have . . . [Para. 90]
* * * *
The purpose and effect of Defendants’ marketing efforts directed at underage consumers is to: (a) increase Defendants’ revenues and profits derived from the sale of alcoholic beverages purchased or consumed by underage drinkers; . . . (c) increase the likelihood that young people will commence the consumption of alcoholic beverages prior to the legal drinking age; . . . [Para. 116]
* sf: * *
The human suffering underage drinking causes is enormous and undeniable. Alcohol consumption by teenagers causes physical damage to the brain; interferes with mental, emotional, and social development; degrades academic performance; and increases the incidence of risky sexual behavior, teenage pregnancy, juvenile delinquency and violent crimes . . . [Para. 122]
* * * *
The clear, direct, and foreseeable effects of Defendants’ conduct as alleged herein include (a) an increase in the illegal sales of Defendants’ products to underage consumers; ... (c) an increase in the quantiiy of alcoholic beverages consumed by under age drinkers; ... (f) an increase in injuries and illnesses among teenagers; (g) an increase in injuries among the general population; . . . [Para. 125]
* * * *
The allegations contained in all other paragraphs of this Complaint which are not inconsistent with this cause of action are by this reference re-alleged and incorporated herein as if full set forth in this paragraph. [Para. 142]
* * * *
As manufacturers and distributors of unusually dangerous products which are well-established causes of numerous injuries, illnesses, and deaths, Defendants have heightened duties to the Classes to ensure that their products are not used illegally. These duties include:... (b) the duty to ensure that Defendants’ marketing efforts do not unreasonably induce or encourage underage consumers to purchase their products; . . . [Para. 149]
* * * *
Assess all Defendants jointly and severally for all actual damages sustained by the Plaintiff Classes plus treble damages or $1,500 per violation, whichever is greater, punitive damages, and attorneys fees, costs of suit, and interest; . . . [Para. 6 of Prayers]'
The policies contain the following language in the Forms noted.

Commercial General Liability Coverage Form.

We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this *635 insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages . . .
This insurance applies to “bodily injuiy” and “property damage” only if:
(1) The “bodily injuiy” or “property damage” is caused by an “occurrence” that takes place in the “coverage territoiy”; . . .
This insurance does not apply to: . . ."Bodily injuiy" or “property damage” expected or intended from the standpoint of the insured . . .
“Bodily injury” means bodily injuiy, sickness or disease sustained by a person, including death resulting from any of these at any time.
“Occurrence” means an accident, including continued or repeated exposure to substantially the same general harmful conditions.
It is further provided in the CGL Form that the insurance does not apply if Boston Beer or certain of its employees “knew prior to the policy period that the ‘bodily injury’ or ‘property damage’ had occurred in whole or in part.” The bodily injuiy or property damage “will be deemed to have been known to have occurred . . . when any insured receives a written or verbal demand or claim for damages because of the ‘bodily injuiy’ or ‘property damage.’ ’’

liquor Liability Coverage Form.

We will pay those sums that the insured becomes legally obligated to pay as damages because of an “injuiy” to which this insurance applies if liability for such “injuiy” is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any “suit” seeking those damages . . .
“Injuiy” will be deemed to have been known to have occurred at the earliest time when any insured . . .
Reports all, or any part, of the “injury” to us or any other insurer;
Receives a written or verbal demand or claim for damages because of the “injuiy”; or
Becomes aware by any other means that “injuiy” has occurred or has begun to occur.
“Injuiy” means all damages, including damages because of “bodily injuiy” and “property damage,” and including damages for care, loss of services or loss of support.
This is the factual context in which the Court will assess the motions.

DISCUSSION

Rule 56(c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 824 (1974), provides that summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” We view the evidence in the light most favorable to the nonmoving party. See BayBank v. Bornhofft, 427 Mass. 571, 573 (1998).
Vittands v. Sudduth, 49 Mass.App.Ct. 401, 405-06 (2000).
An insurer has a duty to defend an insured from a third-party action when “the underlying allegations are ‘reasonably susceptible’ of an interpretation that they.. . adumbrate a covered claim.” Simplex Technologies, Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 199 (1999).[4] The claim need only “give[] rise to the possibility of recoveiy under the policy; there need not be a probability of recoveiy.” Id., quoting 7C J.A. Appleman, Insurance Law and Practice §4683.01, at 67 (rev. ed. 1979). “The process [for the Court] is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.” Simplex Technologies, Inc. supra, 429 Mass. at 198 quoting from Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 332 (1992).
The absence of any explicit claim for a covered loss is not dispositive because the Court must “look beyond the specific causes of action” in the underlying complaint. Global Naps, Inc. v. Federal Ins. Co., 336 F.3d 59, 62 (1st Cir. 2003).
As a threshold matter, the underlying complaint must at least allege facts that support a claim that could lead to the recoveiy of a covered loss. SCA Servs., Inc., supra, 412 Mass. at 335; see also Terrio v. McDonough, 16 Mass.App.Ct. 163, 168 (1983) (“There is no duly to defend if the complaint alleges only liability which the policy excludes from coverage”). The covered loss, however, need only be “allegejd] in the most general terms.” Simplex Technologies, Inc., supra, 429 Mass. at 199.
An insurer’s duty to defend the insured against suits raising reasonably susceptible allegations protects the insured “[i]rrespective of the weakness of the underlying complaint.” Garnet Constr. Co. v. Acadia Ins. Co., 61 Mass.App.Ct. 705, 707 (2004).
As here, Mass Bay and Royal should defend Boston Beer against the poorly pleaded Class Actions claims if they might lead to covered losses.
An insurer, however, has no duty to defend in cases where the underlying complainant fails to even allege facts supporting a claim from which a covered loss may be proven. In Sullivan v. Utica Mut. Ins. Co., 439 Mass. 387, 390, 395 (2003), allegations in the complaint were not “ ‘reasonably susceptible’ of a construction that would bring them within the purview of claims covered under” the policy. In Sullivan, the complaint alleged premium overcharges and fraudulent acts of concealment, but the policy excluded coverage for claims relating to the payment of premi *636 urns. Id. Likewise, in SCA Services, Inc., the insurer had no duty to defend a complaint that did not allege a “sudden and accidental” event covered under the policy. 412 Mass. at 335; see also Billings v. Massachussets Prop. Ins. Ass’n, Civil. No. 02679 (Barnstable Super. Ct., March 28, 2006) (Connon, J.) (21 Mass. L. Rptr. 181) (unpublished) (holding that insurer had no duty to defend against complaint that alleged emotional distress when bodily injury was the covered loss); United States Fire Ins. v. Peerless Ins., Civil No. 005595 (Middlesex Super.Ct. June 15, 2004) (Brassard, J.) (18 Mass. L. Rptr. 64) (holding that insurer had no duty to defend against complaint that alleged economic damage when property damage was the covered loss).
On the other hand, Massachusetts courts impose a duty to defend when a third party’s complaint makes general allegations that might possibly support recovery of a loss that is covered under the policy. In Simplex Technologies, Inc., the insurer had a duty to defend against a complaint that generally alleged that the insured was responsible for exposing the plaintiffs to products containing asbestos. 429 Mass. at 199. The insurer had to defend the action even though the policy only covered injuries from “Hitemp” products because the plaintiffs allegations, although broad, still sketched a claim for damages resulting from Hitemp products. Id. at 198-200. The underlying complaint in Simplex Technologies, Inc. did not need to specifically allege that the insured exposed the plaintiff to asbestos from Hitemp products. Id. at 200; see also Ruggerio Ambulance Service v. National Grange Ins., 430 Mass. 794, 796 (2000) (holding that insurer had duty to defend suit alleging insured died because of delayed emergency response after an accident when bodily injury caused by an accident was a covered loss).
Without digging too deeply into the policies, language, it is enough to say that the Commercial General Liability (“CGL”) coverage is for those sums Boston Beer becomes legally obligated to pay as damages because of “bodily injury” or “property damage” if caused by an “occurrence.” “Bodily injury” is defined as “bodily injury, sickness, disease, disability, shock, mental anguish, mental injury and humiliation sustained by a person, including death resulting from any of these at any time.” “Occurrence” is defined as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.”
As recited above in the Background section, the underlying complaints allege damages due to bodily injury. The quoted language from the underlying complaints, when read as this Court should for the purposes of determining the obligation to defend under policies, sufficiently establishes the requisite allegations of “bodily injury.”
The next question is whether the bodily injury was “caused by an occurrence.” As such there must be allegations of an “accident” which commonly means “an unexpected happening without intention or design.” Preferred Mut. Ins. Co. v. Gamache, 42 Mass.App.Ct. 194, 197 (1997). The policies here define an “occurrence” as “bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.”
Sections of the underlying complaints quoted above also include, among other things, sufficient claims for bodily injury caused by an occurrence.
Further, the policy language contemplates the possibility that multiple acts over time can constitute an occurrence. See, e.g., RLI Ins. Co. v. Simon’s Rock Early College, 54 Mass.App.Ct. 286, 294 (2002). The words “an accident, including continuous or repeated exposure to substantially the same general harmful conditions” would include the language quoted above. See, e.g., Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co., 523 F.Sup. 110, 114 (D.Mass 1981).
There is nothing in the language from the complaints that shows anything other than that Boston Beer did not expect or intend the resulting injury that their actions caused. Thus, the “expected and intended” exclusion does not apply.
In assessing the obligations of a duly to defend, “What is not permitted is that an insurer shall escape its duty to defend the insured against a liability arising on the face of the complaint and policy, by dint of its own assertion that there is no coverage in fact: the insurer then stands in breach of its duty even if the third party fails in the end to support any such claim of liability by adequate proof.” Swift v. Fitchburg Mutual Ins. Co., 45 Mass.App.Ct. 617, 624 (1998), quoting from Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 324 (1983).
The insurers point out, and Boston Beer agrees, that on every case of the type presented in the underlying Class Actions in which a motion to dismiss has been presented such motion has been allowed. While this may well suggest the weakness of the underlying cases it in no way excuses the insurers from the obligation to defend against them. At the duty to defend stage, however, this Court may not consider extrinsic facts not known by the insurer at the time it was asked to defend. Boston Symphony Orchestra v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989); Millipore Corp. v. Travelers Indemnity Co., 115 F.3d 21, 35-36 (1st Cir. 1997). Thus, what may have been involved in arguments made by Boston Beer in motions to dismiss any of the claims is not a basis on which a duty to defend may be avoided.
Finally, Mass Bay, but not Royal, also argues that two underage drinking class action suits, not included in the five in issue here, but that included Boston Beer as a defendant, were filed in Ohio in April and June of 2004. These cases — captioned Eisenberg v. Anheuser Busch Inc. et al, No. 04-529102, and Tully v. Anheuser-Busch Inc. et al, No. 04-532269—are said to be *637 substantially identical to the underlying actions. Mass Bay further asserts that Boston Beer, through its Corporate Legal Director, became aware of the Ohio actions on May 4, 2004 and June 10, 2004 respectfully. It is alleged that despite this knowledge, Boston Beer never mentioned the pending Ohio actions when seeking insurance from Mass Bay. Consequently, Mass Bay argues, that it has no duiy to defend here.
A problem with Mass. Bay’s contention, however, is that the Ohio cases are claims based on Ohio law. The five cases involved here are based on New York, West Virginia, Wisconsin, Florida and Michigan law. The “occurrences” involved in the five underlying claims did not involve Ohio and, to that extent at least, are different. Thus, Boston Beer’s knowledge of the Ohio suits does not permit Mass. Bay to avoid its obligations with regard to non-Ohio suits.
Mass Bay and Royal owe duties to defend Boston Beer in the five Class Actions under the CGL Forms of their respective policies.
It further appears that the carriers owe duties to defend under the Liquor Liabiliiy sections as well. Under the Liquor Liability Forms, Boston Beer must only show that the plaintiffs in the underlying Class Actions make claims for “damages” resulting from “injury.” “Injury” is defined as “all damages, including damages because of‘bodily injury’ and ‘property damage,’ and including damages for care, loss of services or loss of support.” What is included are all injuries “imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.”
The Class Action complaints, in addition to the allegations quoted above, charge Boston Beer with causing harm as a result of their manufacturing, marketing, selling and distributing their alcoholic products. The charges include the following:
[Boston Beer] knowingly profited from a billion dollar illegal business of selling alcohol to underage persons. (Emphasis added.)
The purpose and effect of [Boston Beer’s] marketing efforts directed at underage consumers is to: (a) increase [Boston Beer’s] revenue and profits derived from the sale of alcoholic beverages purchased or consumed by underage drinkers. (Emphasis added.)
* * * * *
The clear, direct, and forseeable effects of [Boston Beer’s] • conduct as alleged herein include (a) an increase in the illegal sales of [Boston Beer’s] products to underage consumers. (Emphasis added.)
The insurers claim that what is really being challenged is marketing and advertising of alcoholic beverages, not the selling thereof. The wording used in the complaints, however, is not so limited.

ORDER

For the foregoing reasons, Royal Indemnity Company’s Motion for Summary Judgment on Cross-claim, Paper #33, and Massachusetts Bay Insurance Company’s Motion for Summary Judgment, Paper #39, are each DENIED.

To the extent needed, each of these cases will be referred to by the name of the plaintiff e.g., for the first numbered case “SciocchettL ”

Tomberlin was brought in Wisconsin, not New York. This error, however, is an indication that the various complaints were essentially copied from state to state.

The Supreme Judicial Court’s analysis for an insurer’s duty to defend in Simplex Technologies, Inc., was an “expansive interpretation” of this duty. Rubenstein v. Royal Ins. Co. of America, 429 Mass. 355, 359 n.4 (1999). Even before Simplex Technologies, Inc., however, the Supreme Judicial Court broadly interpreted the insurer’s duty to defend. Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 368 (1996) (“The duty to defend is broader than the duiy to indemnify as an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded”); Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989). (“It is axiomatic that an insurance company’s duty to defend is broader than its duty to indemnify”).