Hinkle, Margaret R, J.
Plaintiff National Union Fire Insurance Company of Pittsburgh, PA (“National Union”) seeks a declaration that it has no duty to defend or indemnify defendant Modern Continental Construction Company, Inc. (“Modern”) for property damage claims asserted against Modern in connection with the ceiling collapse of the 1-90 Connector Tunnel, part of the “Big Dig.” National Union now moves for judgment on the pleadings. It also moves to dismiss Modern’s breach of contract and bad faith counterclaims for failure to state a claim upon which relief can be granted.

BACKGROUND

The relevant facts according to the pleadings and attached documents are as follows. On November 28, 2006, the Commonwealth of Massachusetts and other state parties (collectively the “Commonwealth”) filed a complaint against Modern and other contractors for damages arising out of the July 10, 20061-90 Connector Tunnel ceiling collapse (the “Commonwealth Complaint”). The City of Boston intervened and asserted nearly identical claims (the “Intervenor Complaint”).[1] The Commonwealth Complaint referred to the entire Central Arteiy/Third Harbor Tunnel Project as the “Project” (Commonwealth Compl. ¶7), the purpose of which was to:
. . . widen] ] and depress] ] the Central Arteiy between the Massachusetts Avenue interchange northerly to an interchange with Interstate 93 and Route 1 and to a point on 1-93 north of the John F. Gilmore Bridge, and extend] ] the Massachusetts Turnpike (Interstate 90) from its former terminus, under Boston Harbor, to a new terminus at Logan International Airport.
(Commonwealth Compl. ¶22.) According to the Commonwealth Complaint, the Massachusetts Highway Department “contracted with Modem to perform the ‘tunnel finishes’ work in the 1-90 Connector Tunnel.” As part of its contract,
Modern was responsible for installing the Ceiling System.[2] Modern contracted with Sigma to provide engineering calculations for the Ceiling System. Modern contracted with Conam to perform “pull tests” on anchor bolts in the Ceiling System after those bolts were installed. Modem purchased the epoxy from Newman Renner, which, upon information and belief, purchased the epoxy from Powers. *17 Upon information and belief, Powers purchased the epoxy from Sika.
(Commonwealth Compl. ¶30.) The complaint further alleged that:
On July 10, 2006, concrete ceiling panels and associated components over the eastbound lanes of the 1-90 Connector Tunnel fell onto the roadway and crushed a traveling vehicle, resulting in the death of a passenger and the injury of the driver. That event caused extensive damage, including but not limited to, property damage, the shutdown of the 1-90 Connector Tunnel and related roadways and extensive inspection and repair work on the Project.
(Commonwealth Compl. ¶31.)
In its complaint, the Commonwealth asserted five counts against Modern: breach of contract (Count I), negligence (Count II), breach of warranty (Count IV), contractual indemnity (Count V), and common-law indemnity (Count VI). (Commonwealth Compl. ¶¶33-56.) The Intervenor Complaint makes nearly identical factual allegations but asserts only one single count, negligence. (Intervenor Compl. at ¶¶30-34.)
On December 22, 2006, Modern notified National Union of the Commonwealth and Intervenor Complaints. Modem sought coverage under two insurance policies, a commercial general liability policy (“CGL Policy”) and a commercial umbrella policy (“Umbrella Policy”).
The CGL Policy’s insuring agreement provides that National Union “will pay those sums that the insured becomes legally obligated to pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies,” and that it “will have the right and duty to defend any ‘suit’ seeking those damages.” CGL Policy §I.A. 1 .a. The insurance applies to “bodily injury” and “property damage” caused by an “occurrence.” Id. at §I.A. 1 .b(l). “Property damage” is defined in relevant part as “[pjhysical injury to tangible property, including all resulting loss of use of that property ... or [l]oss of use of tangible property that is not physically injured . . .” Id. at §V.15. “Occurrence” is defined in relevant part as “an accident.” Id. at §V.12. The CGL Policy also contains various exclusions that will be set forth below when necessary. The insuring agreement, definitions, and relevant exclusions in the Umbrella Policy are virtually identical to those in the CGL Policy. (PI. Memo at 4; Def. Memo, at 5 n.5.)
Modern sent letters to National Union on January 9, 2007, May 31, 2007, July 31, 2007, August 24, 2007, and September 12, 2007 requesting National Union’s coverage position with respect to the Commonwealth and Intervenor Complaints. On September 18, 2007, National Union agreed to defend Modem against the complaints under a reservation of rights. In light of the reservation of rights, Modern objected to counsel appointed by National Union and exercised its right to appoint counsel of its choosing. Disputes arose between the parties over Modern’s choice of counsel and National Union’s reluctance to participate in settlement negotiations. National Union eventually exercised its reservation of rights and denied coverage under the Umbrella Policy on March 6, 2008 and the CGL Policy on March 24, 2008.

DISCUSSION

I. Duty to Defend

Constming the language in an insurance contract, including its exclusions, presents a question of law for the Court. Ober v. Nat’l Cas. Co., 318 Mass. 27, 30 (1945); Camp Dresser & McKee, Inc. v. Home Ins. Co., 30 Mass.App.Ct. 318, 323 (1991). “As a general rule, the policyholder bears the initial burden of proving coverage within the policy description of covered risks. Once basic risk coverage is established, the burden shifts to the insurer to prove the applicability of any exclusion to coverage set forth outside of the insuring clause.” Id. at 321 (citations omitted).
It is well-settled that an insurance company’s duly to defend is broader than, and independent of, its duty to indemnify. Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 10 (1989). “(T]he duty to defend is based on the facts alleged in the complaint and those facts which are known by the insurer.” Id. at 10-11. The duty arises if “the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms.” Cont’l Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146 (1984) (citations and internal quotation marks omitted). “Otherwise stated, the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.” Id. at 147, quoting from Sterilite Corp. v. Con’t Cas. Co., 17 Mass.App.Ct. 316, 318 (1983). “There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.” Sterilite Corp., supra at 319, quoting from Union Mut. Fire Ins. Co. v. Topsham, 441 A.2d 1012, 1015 (Me. 1982). In short, “the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage.” Id.

a. “Property Damage” and “Occurrence"

National Union first contends that the complaints do not allege “properly damage” caused by an “occurrence” as defined in the policies so as to trigger coverage under the insuring agreements. According to National Union, the complaints allege only damage to Modern’s own work product caused by Modem’s faulty workmanship. “Faulty workmanship, alone, is not an ‘occurrence’ as defined by the . . . policy: nor does the cost to repair the defective work constitute property damage.” Davenport v. U.S. Fid. & Guar. Co., 56 *18 Mass.App.Ct. 1109 (2002). “(F]aulty workmanship [that] causes an accident,” however, may amount to an occurrence. Id., quoting from Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 249 (1979).
The Court rejects National Union’s argument that the ceiling collapse was not an occurrence. The policies define “occurrence” as an “accident.” “The term ‘accident’ is to be broadly construed in a policy insuring against damage by accident. In its common signification the word means an unexpected happening without intention or design.” Beacon Textiles Corp. v. Employers Mat. Liab. Ins. Co., 355 Mass. 643, 645-46 (1969) (citations omitted) (concluding that “a change of color in yarn due to a latent unexplained defect is an accident”). While a crack in the ceiling or a leak might be expected to result from Modern’s faulty workmanship, it is unlikely that Modern intended for or expected a portion of the concrete ceiling to completely collapse.
The Court also rejects National Union’s narrow reading of the complaints. National Union claims that only damage to Modem’s own work, i.e., the tunnel finishes and ceiling system, is alleged. The complaints, however, broadly allege “property damage” without any limiting language. They also allege “extensive inspection and repair work on the Project,” which is defined in the complaints as encompassing the entire project and not just the tunnel finishes and ceiling system. In sum, the language in the complaints is broad enough to encompass damage to property beyond the tunnel finishes and ceiling system. Because the complaints allege property damage caused by an occurrence, they triggered National Union’s duty to defend under the policies.

b. Exclusions

National also argues that, even if the complaints meet the terms of the insuring agreements, at least one of six exclusions applies to preclude coverage. Ambiguities in policy exclusions are strictly constmed against the insurer, Boston Symphony Orchestra, Inc., 406 Mass. at 12, who bears the burden of proving their applicability, Camp Dresser & McKee, Inc., 30 Mass.App.Ct. at 321.
According to National Union, three exclusions preclude coverage for property damage caused by Modern’s faulty workmanship. The first is the “Damage to Property” exclusion, which bars coverage for “Property damage” to:
(5) That particular part of real property on which you or any contractors or subcontractors who are working directly or indirectly on your behalf are performing operations, if the “property damage” arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because ‘your work’ was incorrectly performed on it.
CGL Policy §I.2.j. Paragraph (6) of the exclusion “does not apply to ‘property damage’ included in the ‘products-completed operations hazard.’ ”
Subsection (5) is inapplicable on its face. It precludes coverage only for damage to real property that Modern or its subcontractors “are working . . . on” (emphasis supplied). This language connotes active work at the time the damage occurs. See Hakim v. Mass. Insurers’ Insolvency Fund, 424 Mass. 275, 280 (1997) (“we must construe the words of the policy in their usual and ordinary sense”). It is undisputed that Modern was not working on the ceiling at the time it collapsed.
Subsection (6) is more complicated. It excludes coverage to the extent that the complaints allege damage to property caused by Modern’s faulty work on that property. As discussed above, the Court rejects National Union’s argument that such excluded damage is the only property damage alleged in the complaints. Rather, the complaints allege property damage to the Project as a whole. Thus, notwithstanding this exclusion, National Union has a duty to defend Modern against the complaints unless and until it is determined that the only actual damage was to property on which Modern performed faulty work.[3] See Simplex Technologies v. liberty Mutual Ins. Co., 429 Mass. 196, 199 (1999) (“That some, or even many, of the underlying claims may fall outside the coverage does not excuse [an insurer] from its duty to defend these actions”).
Modern argues that the exclusion does not apply at all because the products-completed operations hazard (“PCOH”) exception to subparagraph (6) applies. The PCOH includes “all . . . ‘property damage’ occurring away from premises you own or rent and arising out of ‘your product’ or ‘your work.’ ” CGL Policy §V. 14.a. It only covers completed work. CGL Policy §V.14.a(2). As modified by Endorsement MS 0011, PCOH “COVERAGE IS PROVIDED FOR A PERIOD OF THREE (3) YEARS AS SET FORTH IN SECTION V-DEFINITIONS, 14b(l) and (2).” According to §V.14.b(l) and (2), completion occurs “(w]hen all of the work called for in your contract has been completed” or “(w]hen all of the work to be done at the site has been completed if your contract calls for work at more than one site.” CGL Policy §V. 14.b, as modified by Endorsement MS 0011.
The parties disagree over the period of PCOH coverage provided for in the policies. Modern contends that the three-year period of coverage began on the date the policy was issued, November 11, 2005. If Modern is correct, the July 10, 2006 ceiling collapse would fall within the three-year period. Modem’s interpretation, however, is at odds with the language of the endorsement and §V.14.b(l) and (2). National Union contends that the three-year period began when Modern’s contract was completed in accordance with §V. 14.b(l) and (2). This interpretation is supported by the policy and endorsement. Since Modem asserts in *19 its opposition memorandum that no one performed work on the ceiling panel within three years of its collapse (Def. Memo, at 27), the incident was not covered by the PCOH coverage and thus the exception to subparagraph (6) of the exclusion does not apply. But see B&T Masonry Constr. Co., Inc. v. Pub. Serv. Mut Ins. Co., 2003 WL 24289244, *3 (D.Mass. Sept. 26, 2003) (concluding without discussing period of PCOH coverage that “(s)ubsection (j)(6) does not apply to property damage that occurred after [the insured’s] work was completed”).
The second faulty workmanship exclusion advocated by National Union is the “Damage to Your Product” exclusion, which bars coverage of “ ‘Property damage’ to ‘your product’ arising out of it or any part of it.” CGL Policy §1.2.k. The definition of “your product” expressly carves out real property. CGL Policy §V. 17 (“ ‘Your product’ means . .. [a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . (y]ou’j (emphasis supplied). The tunnel finishes and ceiling system constitute real property. See Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 814 (1st Cir. 2006) (“Massachusetts case law defines real property as property ‘so annexed that it cannot be removed without material injury to the real estate or to itself ”}, quoting from Medford. Trust Co. v. Priggen Steel Garage Co., 273 Mass. 349 (1930). As such, this exclusion does not apply.
Nevertheless, even if this exclusion did apply, it would not relieve National Union of its duty to defend the complaints to the extent they allege damage to other properly. Even if the precise cause of the damage was the epoxy (as Modem claims) and the epoxy was Modern’s “product,” this exclusion would operate the same as the Damage to Property exclusion in that it “is intended to exclude insurance for damage to the insured’s product or work, but not for damage caused by the insured’s product or work ... In such a situation, while there would not be coverage for damage to the work or product itself, damages caused by the product to other work or products would be covered.” Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 92 (1995), quoting from 2 R. Long, Liability Insurance §11.09(2) (1993).
The final faulty workmanship exclusion relied on by National Union is the “Damage to Your Work” exclusion, which excludes coverage of “ ‘Property damage’ to ‘your work’ arising out of it or any part of it and included in the ‘products-completed operations hazard.’ ” CGL Policy §1.2.1. “Simply put, this provision excludes coverage for damage to the insured’s own work which is caused by the work, or a part of it, and occurs after the job has been completed.” Davenport, 56 Mass.App.Ct. 1109. This exclusion also operates like the Damage to Property and Damage to Your Product exclusions by excluding coverage of property damage caused by the insured’s faulty work on that property while covering damage to other property caused by the faulty workmanship. See Betty Caplette Builders, Inc., supra[4]
In addition to the faulty workmanship exclusions, National Union claims that the “Damage to Impaired Property or Property Not Physically Injured” exclusion applies. It excludes coverage of “ ‘[property damage’ to ‘impaired property’ or properly that has not been physically injured, arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in ‘your product’ or ‘your work.’ . . . This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injuiy to ‘your product’ or ‘your work’ after it has been put to its intended use.” CGL Policy §I.2.m. Interpreting a similar exclusion, the Appeals Court explained that this exception:
. . . removes from the . . . exclusion and retains coverage for instances where there is loss of use of tangible property, e.g., equipment, occasioned by “sudden and accidental” damage to the insured’s products (even though, we interpolate, this damage may be related to inadequacies of the insured’s products). The effect of [this exclusion] is to distinguish “between a physical breakdown of the insured’s product and a mere failure of the product to perform as well as warranted, presumably because the latter is a typical business risk whereas the former is more likely to have catastrophic consequences.
Sterilite Corp., 17 MassApp.Ct. at 322, quoting from Honeycomb Syss., Inc. v. Admiral Ins. Co., 567 F.Sup. 1400, 1407 (D.Me. 1983). The ceiling panel collapse here seems to go beyond a mere failure of Modern’s work to perform as well as warranted. Rather, it appears more akin to a physical breakdown and, as such, constituted sudden and accidental damage to Modern’s work, even if related to inadequacies of that work. The exclusion is therefore inapplicable.
National Union next contends that the “Recall of Products, Work or Impaired Property” exclusion applies. This exclusion bars coverage of
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of
(1) “Your product;”
(2) “Your work;” or
(3) “Impaired property;”
If such . . . work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.
CGL Policy §I.2.n. The complaints allege no recall or withdrawal of Modem’s work in any traditional sense *20 of those words. Instead, they allege damage caused by work that has already failed. Amtrol, Inc. v. Tudor Ins. Co., 2002 WL 31194863, *10 (D.Mass. Sept. 10, 2002) (exclusion “does not apply when the product has already failed and caused property damage”).
The final exclusion advocated by National Union is the “Contractual Liability” exclusion. This exclusion, in relevant part, bars coverage of “ ‘property damage’ for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.” The exclusion does not apply to liabiliiy for damages that the insured “would have in the absence of the contract or agreement” or assumed in an “insured contract.” CGL Policy §I.2.b. An “insured contract” includes “(t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for . . . ‘property damage’ to a third person or organization.” CGL Policy §V.8.f.
This exclusion is inapplicable to the Intervenor Complaint, which alleges no contractual liability. This exclusion is also inapplicable to the Commonwealth’s breach of contract (Count I) and breach of express warranty (Count IV) claims because those causes of action involve liabiliiy Modem incurred under its contract with the Commonwealth rather than liability it assumed under the contract. See USM Corp. v. First State Ins. Co., 420 Mass. 865, 869 (1995) (distinguishing between assumed and incurred liabiliiy). The breach of express warranty claim also survives the exclusion because, in the absence of an express warranty, there would still be an implied warranty of fitness for a particular purpose and any breach would fall within the exception for liabiliiy Modern “would have in the absence of the contract or agreement.” See id. at 870 (interpreting a similar exception to a contractual-liability exclusion).
This leaves the Commonwealth’s claim for contractual indemnification (Count V). The meager briefing provided by National Union on the applicability of this exclusion, which includes no case law, is insufficient to sustain its burden of demonstrating the applicability of this exclusion. (PI. Memo, at 17.)
In sum, the allegations in the Commonwealth and Intervenor Complaints were broad enough to allege damage to property other than that on which Modern performed faulty work. National Union has not met its burden of proving that a policy exclusion completely precludes coverage of the complaints. It therefore has a duty to defend Modem unless and until it is determined that there is no possibility of coverage, i.e. that the only damage was to property on which Modem performed faulty work, which is excluded from the policies by the Damage to Property and Damage to Your Work exclusions.
The Court further notes that by agreeing to defend Modern under a reservation of rights, National Union had a duty to defend Modern until it exercised that reservation. “(I]t must be emphasized that the reservation of rights would not have excused [the insurer’s] duty to protect [the insured] while [the insurer] investigated to determine whether coverage existed. This duly is made clear by our cases.” Sarnafil Inc. v. Peerless Ins. Co., 418 Mass. 295, 304 (1994). The Court reserves judgment on what effect the parties’ dispute over Modern’s choice of counsel has on its duty to defend.

II. Duty to Indemnify

Because there is a possibility of coverage under the complaints, National Union’s duty to indemnify Modern cannot be determined at this time. Its motion for judgment on the pleadings on this issue is DENIED.

III. National Union’s Motion to Dismiss Modern’s Counterclaims

National Union’s motion to dismiss Modern’s counterclaims for breach of contract and bad faith is premised entirely on its contention that the Commonwealth and Intervenor Complaints are not covered by the policies. In light of my conclusion that National Union had at least a duty to defend, its motion to dismiss is DENIED.

ORDER

For the reasons stated above, National Union’s motion for judgment on the pleadings is DENIED. Its motion to dismiss Modem’s counterclaims for breach of contract and bad faith is also DENIED.

 The parties agree that the substance of the Commonwealth Complaint and the Intervenor Complaint are, for ail relevant purposes, the same and treat them as such in their memoranda. (PI. Memo, at 6;'Def. Memo, at 1.)

 The Commonwealth Complaint defined the “Ceiling System” as “precast concrete panels placed into steel framing modules and suspended from bolts with metal hanger assemblies with the bolts anchored with epoxy into holes drilled into the roof of the tunnel shell or anchored with nuts and washers into steel unistruts in the roof of the tunnel.” (Commonwealth Compl. at 29.)

 Modem takes the position that only the epoxy anchors were defective and argues that this exclusion would only exclude the Commonwealth and City of Boston’s claims for property damage to the epoxy anchors. To the contrary, the exclusion would bar coverage of property damage to all of Modem’s work on the project. See e.g. Jet Line Servs., Inc. v. Am. Employers Ins. Co., 404 Mass. 706, 711-12 (1989) (when insured was responsible for installing an underground tank and faulty work on the bottom of the tank caused an explosion, workmanship exclusion excluded damage to the entire tank, not just the bottom).

 Modem argues that the exception for faulty work performed by a subcontractor applies. Determining the applicability of this exception, however, is unnecessary. Even if it applied, the Damage to Property exclusion would still preclude coverage to the extent that the damage alleged was to property on which Modem’s work was incorrectly performed because Modern’s “work” includes “[w]ork or operations performed by [Modem] or on [Modern’s] behalf.” CGL Policy §V.19.a.